806 So.2d 559 (2002)
Dwayne Curtis DORSEY, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D01-679.
District Court of Appeal of Florida, Third District.
January 16, 2002.
Rehearing or Certification Denied February 15, 2002.
*560 Bennett H. Brummer, Public Defender and Andrew Stanton, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Paulette R. Taylor, Assistant Attorney General, for appellee.
Before COPE and GERSTEN, JJ., and NESBITT, Senior Judge.
NESBITT, Senior Judge.
The State charged Defendant, Dwayne Curtis Dorsey, with battery on a law enforcement officer and resisting an officer with violence. Dorsey entered a plea of not guilty and the case proceeded to trial by jury. The jury found Dorsey guilty of the resisting with violence charge and acquitted him of the battery charge. Judgment was entered and Dorsey was sentenced as a Habitual Violent Felony Offender to five years imprisonment. On appeal, Dorsey argues that two erroneous rulings during the jury selection process entitle him to reversal of his conviction and remand for retrial. We affirm the order under review.
Dorsey's first claim of error goes to venireperson Edwin McLean. During voir dire, McLean testified as to several mixed experiences with the police. McLean assured the court that these experiences would have no impact on his decision making in the instant case. This dialogue included the following exchange.
THE COURT: Okay. You have several friends who are police officers including the Police Chief?
[MR. McLEAN]: I do.
THE COURT: With those relationships, do you feel that you would have any biases one way or the other in this case?
[MR. McLEAN]: I think I may because as president of the Homestead JC, I we usually do a ride-along program. And I have been with many police officers an [sic] several arrests and have had first have seen altercations and things like that and the police in action.
THE COURT: Okay. Well, they have a difficult job just like some other professions are very difficult, as well.
But, would you be able to be fair and impartial if you were to sit on this jury?
[MR. McLEAN]: I would be able to be fair and impartial.
The court thereafter asked:
THE COURT: And you would not give any more credibility to the testimony of a police officer just because that person is a police officer?
[MR. McLEAN]: No.
Despite McLean's mixed experiences, defense counsel moved to dismiss McLean for cause, based on his affiliation with the police and his initial response that the affiliation might affect him. The State maintained that McLean had adequately clarified his earlier statement. The trial court denied the cause challenge and the defense exercised a peremptory challenge against McLean.
Dorsey maintains that the trial court erred in declining to excuse McLean for cause on the basis of incompetency. We disagree. McLean expressed certain beliefs but also stated that he could set aside his personal views and follow the law in light of the evidence presented. It is true that in Price v. State, 538 So.2d 486, 489 (Fla. 3d DCA 1989), we observed the practical truth that "a juror who is being asked leading questions is more likely to *561 `please' the judge and give the rather obvious answers indicated by the leading questions, and as such these responses alone must never be determinative of a juror's capacity to impartially decide the cause to be presented."
In the instant case, however, the record reflected a broad range of experiences, both positive and negative. The trial judge's decision was based on more than the response outlined above. McLean specifically related an incident where he was pulled over by a metro police officer and had an unfavorable experience where he thought the officer wrongly wrote him a ticket, kept him waiting for 45 minutes, and then when he went to court, the officer could not identify McLean's vehicle. Mc-Lean's impression was that the officer was basically rude when he told her that she did not have her headlights on. The fact that the same juror had both favorable and unfavorable experiences with the police makes a difference in looking at the merits of the cause challenge, and makes the trial court's ultimate decision entirely proper. McLean's testimony, when considered in full, leaves no reasonable doubt as to the propriety of the trial court's conclusion that this potential juror possessed the state of mind necessary to render an impartial decision.
The trial court was in the best position to assess the challenge at issue. See Gore v. State, 706 So.2d 1328, 1334 (Fla.1997)(Trial court did not abuse its discretion, in a murder trial, in declining to excuse venire members challenged for cause on basis of incompetency; while challenged venire members expressed certain biases and prejudices, each also stated that they could set aside their personal views and follow the law in light of the evidence presented, and trial court was in a better position to assess their credibility.) See also Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984) (observing "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court"). Accordingly, we find no error in the court's ruling as to this venireperson.
Dorsey also maintains that the trial court erred in permitting the State to exercise a peremptory strike against venireperson Tamika George. When the State sought to exercise the challenge against George, the following transpired:
[PROSECUTOR]: The State would exercise a peremptory challenge on Ms. George. She appeared disinterested throughout. I was looking at her. She was sort of staring at the wall.
[DEFENSE COUNSEL]: Your Honor, we would ask for a race neutral reason one for several reasonsMs. George has four golds on the bottomI know that because she smiled the whole time I was up there talkingI also noticed when you were doing voir dire, I also saw that it wasn't that she was disinterested, she listened.
She was very attentive, she smiled in a lighthearted manner. She is also African-American. Dwayne Dorsey is African-American.
THE COURT: State is that the only reason?
[PROSECUTOR]: That's the reason. To me, she appeared disinterested. She did notwasn't listening to anything.
The trial judge thereafter stated that he did not consider the challenge pretextual. He observed "[h]er [the prosecutor's] first challenge was against a Hispanic female. Now, we are talking a[sic] African-American female. It is not as if she is trying to single out any particular group." Defense *562 counsel again questioned the authenticity of the prosecutor's challenge. In response to which, the court asked the prosecutor, "are you telling me as an officer of the Court that that [disinterest] was your observation of this juror and that is why you wish to have her excused?" The prosecutor responded affirmatively. The court thereafter concluded that it was going to take the prosecutor at her word, and allow the challenge.
Relying on Wright v. State, 586 So.2d 1024 (Fla.1991), Dorsey argues that the trial court's decision permitting the State to exercise a peremptory strike against George mandates reversal. In Wright, the Supreme Court ruled that a peremptory challenge based on body language would be unacceptable unless observed by the trial judge and confirmed by the judge on the record.
We believe that Dorsey's reliance on Wright is misplaced. Our opinion in English v. State, 740 So.2d 589 (Fla. 3d DCA 1999), indicates that the analysis applicable to such a question has changed with the Supreme Court's decision in Melbourne v. State, 679 So.2d 759 (Fla.1996). In English, the defendant had unsuccessfully challenged a venireperson whom the defense claimed to have observed rolling his eyes and giving the appearance of not understanding or liking defense counsel questions. We concluded that post Melbourne, the trial judge erred in precluding such a challenge based on the trial judge's failure to personally observe the objectionable behavior. See Washington v. State, 773 So.2d 1202 (Fla. 3d DCA 2000). The First District reached this same conclusion in Bowden v. State, 787 So.2d 185, 189 (Fla. 1st DCA 2001).
As observed in Farina v. State, 801 So.2d 44 (Fla.2001), and again in Jeffries v. State, 797 So.2d 573, 579(Fla.2001), in analyzing the three step process outlined in Melbourne,
[I]f the reason given is facially raceneutral and the court believes that given all the circumstances surrounding the strike, the explanation is not pretext, the strike will be sustained. Id. [Melbourne] at 764. In the third step, the court's focus is on the genuineness of the explanation, not its reasonableness. See id. On appeal, reviewing courts must be mindful of two guiding principles: peremptory challenges are presumed to be exercised in a nondiscriminatory manner; and the trial court's decision, which turns primarily on an assessment of credibility, will be affirmed on appeal unless clearly erroneous. See id.; Rodriguez v. State, 753 So.2d 29, 40 (Fla.), cert. denied, 531 U.S. 859, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000).
In the instant case, the court believed that given all the circumstances surrounding the strike, the explanation given was not pretextual. Thus, as the First District observed:

Melbourne has advised us on review to use common sense and to not create traps of reversible error.
Common sense indicates that the trial judge is in the best posture to determine whether a party is genuinely striking a potential juror for using body language, regardless of whether a notation is placed on the record by the judge or not.
Bowden v. State, 787 So.2d at 189. See Wayne R. LaFave et al., 5 Criminal Procedure 2d Ed. § 22.3(D)(1999)(observing that the thinking in Wright, was rejected in People v. Munson, 171 Ill.2d 158, 215 Ill. Dec. 125, 662 N.E.2d 1265 (1996), where the court stated: "A person's demeanor, subjective as it is, is subject to more than one interpretation. Therefore, that the court did not observe or that the court's *563 interpretation of a prospective juror's demeanor differs from the challenger's observation would not necessarily be dispositive.")
As with the state of mind of a juror, evaluation of the prosecutor's state of mind, as well as the proffered reasons for the peremptory challenge, lies "peculiarly within a trial judge's province." Commonwealth v. Snodgrass, 831 S.W.2d 176, 179 (1992) (citing Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). If the court finds the explanation is not pretextual, the strike will be sustained. See Pringle v. State, 792 So.2d 533 (Fla. 3d DCA 2001). Here, the trial judge considered surrounding circumstances and believed the prosecutor's explanation of her motivation for the strike, as the court was permitted to do. The trial judge's assessment of the veracity of the State's reason was not clearly erroneous. See Melbourne, 679 So.2d at 764.
Accordingly, the order under review is affirmed.