868 So.2d 1192 (2003)
Dwayne Curtis DORSEY, Petitioner,
v.
STATE of Florida, Respondent.
No. SC02-531.
Supreme Court of Florida.
December 18, 2003.
Rehearing Denied March 12, 2004.
*1193 Bennett H. Brummer, Public Defender, and Andrew Stanton, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Michael J. Neimand, Bureau Chief, and *1194 Paulette R. Taylor, Assistant Attorney General, Miami, FL, for Respondent.
PARIENTE, J.
The issue we address in this case is a narrow one: whether a party's observation of a juror's nonverbal behavior may constitute a genuine, race-neutral reason for a peremptory challenge when the purported behavior is challenged by the opposing party and was neither observed by the trial court nor otherwise supported by the record. In the case before us, Dorsey v. State, 806 So.2d 559 (Fla. 3d DCA 2002), the Third District answered this question in the affirmative, concluding that our holding in Melbourne v. State, 679 So.2d 759 (Fla.1996), that the focus in ruling on a challenged strike is the genuineness of the explanation, implicitly overruled Wright v. State, 586 So.2d 1024 (Fla.1991), in which this Court disapproved of peremptory challenges based on a juror's bare looks and gestures that were not observed by the trial judge and confirmed by the judge on the record.[1] We must determine whether this Court's holding in Wright remains valid in light of the Court's subsequent decision in Melbourne.[2] Because we conclude that Melbourne did not overrule the core holding in Wright that a reason for a challenge based on nonverbal communication must have record support, we quash the Third District's decision to the contrary.

I. FACTS
During jury selection for Dorsey's trial on a charge of resisting an officer with violence, the defense objected to a peremptory challenge exercised by the State:
[PROSECUTOR]: The State would exercise a peremptory challenge on Ms. George. She appeared disinterested throughout. I was looking at her. She was sort of staring at the wall.
[DEFENSE COUNSEL]: Your Honor, we would ask for a race neutral reason one for several reasonsMs. George has four golds on the bottomI know that because she smiled the whole time I was up there talkingI also noticed when you were doing voir dire, I also saw that it wasn't that she was disinterested, she listened.
She was very attentive, smiled in a lighthearted manner. She is also African-American. Dwayne Dorsey is African-American.
THE COURT: State is that the only reason?
[PROSECUTOR]: That's the reason. To me, she appeared disinterested. She did notwasn't listening to anything.
[DEFENSE COUNSEL]: Also, say thiswhen [defense counsel] asked who was happy to be here on jury duty, [Ms. George] was the only person [to] affirmatively respond she was happy. We are objecting to the State peremptory. It doesn't [appear] to be any reason.
THE COURT: Well, I just must make a finding. It is not contextual [sic]. Her first challenge was against a *1195 Hispanic female. Now, we are talking a African-American female. It is not as if she is trying to single out any particular group.
[DEFENSE COUNSEL]: Well, Your Honor especially the test is the genuineness of the reason provided by the State.
THE COURT: Absolutely. And a pattern is not controlling.
[DEFENSE COUNSEL]: Right. And here, because the reason it's been produced by the State and what [the prosecutor] says, her only reason, is simply not supported in the record.
Her statement that the juror is disinterested is affirmatively rebutted by the fact that this is the only juror who actually said she wantedI'm sorry what she said, she was happy when she got her jury document notice. I mean
THE COURT: Ms. [prosecutor], I didn't notice it but are you telling me as Officer of the Court that that [lack of interest] was your observation of this juror and that is why you wish to have her excused?
[PROSECUTOR]: Exactly.
THE COURT: I'm going to take [the prosecutor] at her word. I'm going to allow the challenge.
Ms. George did not serve on the jury that found Dorsey guilty as charged. Dorsey asserted in his appeal of the conviction that the trial court erred by permitting the State to exercise the peremptory challenge against Ms. George.
The Third District affirmed, concluding that "[t]he trial judge's assessment of the veracity of the State's reason was not clearly erroneous." Dorsey, 806 So.2d at 563. The district court rejected Dorsey's argument that reversal was mandated by this Court's holding in Wright that "a peremptory challenge based on body language would be unacceptable unless observed by the trial judge and confirmed by the judge on the record." See Dorsey, 806 So.2d at 562. The Third District determined that "the analysis applicable to such a question has changed" with this Court's subsequent decision in Melbourne v. State, 679 So.2d 759 (Fla.1996). Dorsey, 806 So.2d at 562. In Melbourne, this Court articulated a test for assessing a party's explanation for a peremptory challenge, focusing on the genuineness, rather than the reasonableness, of the explanation. See 679 So.2d at 764.

II. ANALYSIS
The issue in this case arises when a reason offered for a peremptory challenge is based on a juror's nonverbal behavior, such as lack of interest, inattentiveness, or lack of eye contact. In Wright, we characterized this type of nonverbal behavior as "bare looks and gestures." 586 So.2d at 1029. When the reason offered for a peremptory challenge is based on a juror's verbal response to questioning during voir dire, the problem we confront in this case does not occur. The juror's response is not only witnessed by the court but, if there is any doubt about the validity or genuineness of the challenge or its pretextual nature, is also captured by the court reporter and available for the trial court to confirm and the appellate court to review. When the appellate court can discern that the actual responses differ from what was represented to and accepted by the trial court, the court's ruling is reversed. See, e.g., McCarter v. State, 791 So.2d 557, 558 (Fla. 2d DCA 2001) (holding that trial court erred in finding reason to be valid where it was refuted by transcript of voir dire); Michelin North America, Inc. v. Lovett, 731 So.2d 736, 742 (Fla. 4th DCA 1999) (holding that the denial of a peremptory challenge constituted clear error where the record refuted the implied finding that the reason given for the strike was not genuine); Overstreet v. State, 712 *1196 So.2d 1174, 1177 (Fla. 3d DCA 1998) (relying on review of transcript in concluding that the trial court erred in sustaining a peremptory challenge because of a "faulty recollection of the responses given during voir dire").
Like verbal responses to questioning, a juror's lack of interest, inattentiveness, or other nonverbal behavior can constitute a racially neutral reason for a strike. However, the question becomes how to determine the genuineness of the reason based on nonverbal communication when opposing counsel challenges the factual basis for the explanation, the trial court does not observe the behavior, and the record does not otherwise support the reason advanced.[3] To answer this question, we reexamine Wright in light of our subsequent decision in Melbourne.
To place both Wright and Melbourne into perspective, we briefly review the precedent on which both decisions rest. In State v. Neil, 457 So.2d 481, 486 (Fla. 1984), this Court held that the exercise of a peremptory challenge solely on the basis of race violates the right of both the defendant and the State to trial by an impartial jury under article I, section 16 of the Florida Constitution.[4] This Court delineated a test for trial courts to use in determining whether the exercise of a peremptory challenge is a pretext for racial discrimination.[5] Subsequently, the United States Supreme Court, in its landmark decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), held that "[e]xclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure." Id. at 85, 106 S.Ct. 1712. Significantly, the Supreme Court stated that the prosecutor could not justify the peremptory challenge
merely by denying that he had a discriminatory motive or affirming his good faith in making individual selections. If these general assertions were accepted as rebutting the defendant's prima facie case, the Equal Protection Clause would be but a vain and illusory requirement.
*1197 Id. at 98, 106 S.Ct. 1712 (internal quotation marks, brackets, and citation omitted).
Relying on Batson, this Court modified the test for evaluating peremptory challenges under Neil in State v. Slappy, 522 So.2d 18 (Fla.1988). This Court stated that the test required a "clear and reasonably specific" race-neutral explanation of "legitimate reasons." 522 So.2d at 22 (quoting Batson, 476 U.S. at 98 n. 20, 106 S.Ct. 1712). The trial court could not "accept the reasons proffered at face value." Instead, the trial court should "evaluate those reasons as he or she would weigh any disputed fact." Id. Under Slappy, the trial court was required to consider two factors in evaluating a proffered reason. The first inquiry was whether the reason was "neutral and reasonable." Id. However, "reasonableness is not enough, since the state also must demonstrate a second factorrecord support and the absence of pretext." Id. at 23. The trial court must evaluate both the credibility of the person and the credibility of the asserted reasons. Id. at 22.
In Floyd v. State, 569 So.2d 1225 (Fla. 1990), issued two years after Slappy, this Court emphasized the necessity of record support for a party's explanation of its reasons for exercising a peremptory challenge during an inquiry under Neil and Slappy. In Floyd, we determined that a defense challenge to the trial court's decision upholding a peremptory challenge was unpreserved because defense counsel did not challenge the accuracy of the explanation for the strike, and explained:
It is the state's obligation to advance a facially race-neutral reason that is supported in the record. If the explanation is challenged by opposing counsel, the trial court must review the record to establish record support for the reason advanced. However, when the state asserts a fact as existing in the record, the trial court cannot be faulted for assuming it is so when defense counsel is silent and the assertion remains unchallenged. Once the state has proffered a facially race-neutral reason, a defendant must place the court on notice that he or she contests the factual existence of the reason. Here, the error was easily correctable. Had defense counsel disputed the state's statement, the court would have been compelled to ascertain from the record if the state's assertion was true. Had the court determined that there was no factual basis for the challenge, the state's explanation no longer could have been considered a race-neutral explanation, and [the juror] could not have been peremptorily excused.
Id. at 1229-30 (emphasis supplied). Floyd's statement that a trial court must establish record support for an explanation challenged by the opponent of the strike is consistent with our holding in Wright that a peremptory challenge based on bare looks and gestures cannot be sustained unless the looks and gestures have record support.[6]
We again highlighted the importance of record support for a reason proffered for a peremptory challenge in Wright, which was issued less than a year after Floyd. The defendant in Wright alleged that the prosecutor unconstitutionally exercised a peremptory challenge for racial reasons. See 586 So.2d at 1027. In attempting to justify the peremptory challenge, the prosecutor first explained that the challenged venireperson would be likely to identify himself with the defendant because they were both black males of similar ages.
*1198 See id. at 1028. The prosecutor then offered the alternative ground that the challenged venireperson did not maintain eye contact with the prosecutor and that the prosecutor was uncomfortable with that. See id. This Court, relying on Slappy, reversed the appellant's convictions and stated that these facts established a "clear violation of Neil and Batson." Id. Regarding the second reason offered by the prosecutor, this Court concluded that the reason was "merely pretextual" and then held, in language significant to this case, that "[p]eremptory challenges based on bare looks and gestures are not acceptable reasons unless observed by the trial judge and confirmed by the judge on the record." Id. at 1029.[7]
The United States Supreme Court revisited its Batson decision and focused on the reason given by the proponent of a peremptory challenge in Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The Court stated that the explanation must be nondiscriminatory on its face and have record support:
Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination. The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." [Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)].
....
In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are "not fairly supported by the record." 28 U.S.C. § 2254(d)(8). Here the Court of Appeals did not conclude or even attempt to conclude that the state court's finding of no racial motive was not fairly supported by the record. For its whole focus was upon the reasonableness of the asserted nonracial motive (which it thought required by step two) rather than the genuineness of the motive. It gave no proper basis for overturning the state court's finding of no racial motive, a finding which turned primarily on an assessment of credibility.

Id. at 767-69, 115 S.Ct. 1769 (citations omitted) (emphasis supplied). Purkett also reaffirmed the principle of Batson that a prosecutor could not satisfy his burden by "merely denying that he had a discriminatory motive or by merely affirming his good faith." Id. at 769, 115 S.Ct. 1769 (emphasis supplied). This language reflects the United States Supreme Court's continued adherence to Batson's fundamental precept that affirmations of good-faith motives will not suffice.
Our decision in Melbourne, issued one year after Purkett, focused solely on the procedural refinements adopted in Purkett and the practical difficulty encountered by *1199 some Florida courts in applying Neil and its progeny. Specifically, this Court adopted guidelines for trial courts to follow in resolving challenges to peremptory challenges on racial grounds. See 679 So.2d at 764.
The step-by-step guidelines established in Melbourne provide:
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. [2] If these initial requirements are met ... the court must ask the proponent of the strike to explain the reason for the strike.
At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation.... [3] If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained....
679 So.2d at 764 (footnotes omitted). We emphasized that in applying these guidelines, the trial court's focus "is not on the reasonableness of the explanation" for the exercise of a peremptory challenge "but rather its genuineness." Id.
In Melbourne, we receded from Slappy's requirement of a "reasonable" rather than a "genuine" race-neutral explanation for the strike, while acknowledging that "[r]easonableness is simply one factor that a court may consider in assessing genuineness." Id. at 764-65 & n. 9. However, we did not address the impact of our holding in that case on the rule established in Wright that bare looks and gestures cannot be accepted as race-neutral reasons for peremptory challenges unless observed by the trial court. The State contends that because the sole focus under Melbourne is now on the genuineness of the explanation, rather than its reasonableness, it is no longer necessary for bare looks and gestures to be observed by the trial court, as required by Wright, or otherwise supported by the record. We disagree.
We did not expressly recede from Wright in Melbourne, and this Court does not intentionally overrule itself sub silentio. See Puryear v. State, 810 So.2d 901, 905 (Fla.2002). Moreover, this Court adheres to the doctrine of stare decisis. See id. Although we recognize that the doctrine of stare decisis is not absolute, it yields only upon a significant change in circumstances after the adoption of the legal rule, or when there has been an error in legal analysis. See id. Because the important policy and constitutional underpinnings of Wright continue to compel adherence to that decision, we determine that the essential holding in Wright survives, and is consistent with, our decision in Melbourne.
The principle that emerges from Wright and Melbourne, in tandem, is that the proponent of a strike based on nonverbal behavior may satisfy its burden of production of a race-neutral reason during the second step of the process described in Melbourne only if the behavior is observed by the trial court or otherwise has record support. Once this burden of production is satisfied, the proponent is entitled to the presumption that the reason is genuine.
Wright's requirement of record support intersects with Melbourne's focus on the genuineness of a proffered explanation during the second of the three steps set out in Melbourne. If, during this second step, the parties disagree as to whether nonverbal behavior, as discussed in Wright, 586 So.2d at 1029, constitutes a *1200 "fact ... existing in the record," Floyd, 569 So.2d at 1229, the proponent must substantiate its observation. As then-Judge Quince observed in Daniel v. State, 697 So.2d 959, 961 (Fla. 2d DCA 1997), the "case law is clear that a `feeling' about a juror is not a valid, neutral reason to exercise a strike, absent support in the record." (Emphasis supplied.) Without a basis apart from one party's perception to substantiate the bare look and gesture whether it is the lack of eye contact in Wright or the purported lack of interest of the juror herethere is no support for the explanation, and the proponent of the strike has not satisfied its burden under Melbourne.
If we were to conclude that the second step of Melbourne is satisfied by the assertion of a race-neutral reason that is disputed by the opposing party and is neither observed by the trial court nor otherwise supported by the record, the trial court would be handicapped in fulfilling the third step of Melbourne, which is the evaluation of the proffered reason. When a verbal response is relied upon to justify a peremptory challenge, an opposing party can easily point out that other venire members gave the same response as the stricken juror, and the appellate court can look to the record to review the trial court's resolution of the dispute. This assessment is hardly possible when a subjective impression based on nonverbal behavior is offered as a reason for the strike and the behavior is neither observed by the trial court nor otherwise supported by the record.
Further, if the proponent of a strike were permitted to meet its burden of production based solely on an attorney's subjective, uncorroborated, and disputed impression of a juror's demeanor, the appellate court would have no basis to determine if the trial court's decision to accept the explanation was clearly erroneous. The trial court's choice to credit one attorney's observations, with no rationale for distinguishing one good-faith representation from the other, would render that decision virtually unreviewable.
In contrast, our decision today allows for meaningful appellate review. We held in Melbourne that the trial court's decision in ruling on the genuineness of the race-neutral basis for a peremptory challenge should be affirmed unless clearly erroneous. See 679 So.2d at 764. We reaffirm that principle. We have continuously deferred to "the superior vantage point of the trial judge, who is present, can consider the demeanor of those involved, and can get a feel for what is going on in the jury selection process." Files v. State, 613 So.2d 1301, 1305 (Fla.1992). However, as recently stated by the United States Supreme Court in the highly deferential context of federal habeas review of a state court's determination on a claim of discrimination in the exercise of peremptory challenges, "deference does not imply abandonment or abdication of judicial review." Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003).
An example of the balance between deference and meaningful appellate review is Francis v. State, 808 So.2d 110 (Fla.2001), cert. denied, 537 U.S. 1090, 123 S.Ct. 696, 154 L.Ed.2d 635 (2002), in which the prosecutor sought to strike a juror who had laughed at the accusation that two people were killed. Although the fact of the juror's laughing was not explicit in the record, we were able to review the record to find support for the conclusion:
While the transcript does not explicitly indicate that Ms. Bennett laughed, it does indicate that she thought "nothing at all" about the accusation that an individual *1201 had killed two people. Given her light-hearted response to such a serious question, it is understandable that the trial court would be particularly attuned to the surrounding circumstances.
Id. at 124. The Court also pointed to the more thoughtful responses of other jurors as support for the prosecution's reason.
In contrast to Francis, there is virtually nothing upon which to base meaningful appellate review when the trial court does not observe the nonverbal behavior, the record does not otherwise support the observation, and the trial court does nothing more than accept as a race-neutral reason an attorney's assertion of a juror's lack of interest because the attorney is an officer of the court. This is why our statement in Floyd, which we have recently reaffirmed, remains the basis for the trial court's decision and appellate review: "It is the state's obligation to advance a facially race-neutral reason that is supported by the record. If the explanation is challenged by opposing counsel, the trial court must review the record to establish record support for the reason advanced." Rimmer v. State, 825 So.2d 304, 320 (Fla.), cert. denied, 537 U.S. 1034, 123 S.Ct. 567, 154 L.Ed.2d 453 (2002) (quoting Floyd, 569 So.2d at 1229) (emphasis supplied).
In addition, sustaining a peremptory challenge based solely on the good faith of the proponent of the strike would squarely collide with the clear holdings of Batson and Purkett that merely affirming a good-faith motive is insufficient to satisfy the proponent's burden of production. See Purkett, 514 U.S. at 769, 115 S.Ct. 1769; Batson, 476 U.S. at 98, 106 S.Ct. 1712. We make these observations not to impugn the good faith of attorneys or judges, but out of concern that approval of the Third District decision in this case would undermine the goal of "the elimination of racial discrimination in the exercise of peremptory challenges." Melbourne, 679 So.2d at 764.
The dissent suggests we are ignoring or abandoning the "overarching principle" of Melbourne and quotes the following statement from Hernandez v. New York, 500 U.S. 352, 374, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (O'Connor, J., concurring in the judgment), for support: "Absent intentional discrimination violative of the Equal Protection Clause, parties should be free to exercise their peremptory strikes for any reason, or no reason at all." Dissenting op. at 1207. The exception in this statement is crucial; in fact, it lies at the heart of all United States Supreme Court precedent arising from and including Batson. Batson, Neil and their progeny, including Melbourne, concern the means for discerning and eliminating intentional discrimination in the exercise of peremptory challenges. The Court in Batson specifically rejected the argument that "the privilege of unfettered exercise of the challenge is of [such] vital importance to the criminal justice system" that a prosecutor's reasons for the exercise of an individual strike could never be questioned. 476 U.S. at 98, 106 S.Ct. 1712.
We leave undisturbed the principle of our precedent dating back to Neil, 457 So.2d at 486, that "[t]he initial presumption is that peremptories will be exercised in a nondiscriminatory manner." See also Windom v. State, 656 So.2d 432, 437 (Fla.1995) (reiterating statement in Neil); State v. Johans, 613 So.2d 1319, 1322 (Fla. 1993) (stating that "the presumption of validity of peremptory strikes established in Neil is still the law in Florida"). However, we note that the State is not entitled to this presumption unless the existence of its proffered reason is either confirmed by the trial court or otherwise supported by the record. Just as the failure to offer any reason whatsoever would be inadequate to *1202 sustain a strike, equally inadequate is an unconfirmed subjective impression that cannot be confirmed by the trial court or reviewed by the appellate court because there is no record support. Therefore, we adhere to the essential principles of both Wright and Melbourne by holding that a potential juror's nonverbal behavior, the existence of which is disputed by opposing counsel and neither observed by the trial court nor otherwise supported by the record, is not a proper basis to sustain a peremptory challenge as genuinely race neutral.[8]

III. THE INSTANT CASE
In this case the prosecutor's asserted reason for the peremptory challengethe juror's lack of interestwas unobserved by the trial court, unsupported by the record, and directly contradicted by defense counsel's identification of facial expressions and record responses given by the venireperson indicating an interest in serving. In response to the prosecutor's contention that the venireperson, Ms. George, was "disinterested," defense counsel countered with his observation that the African-American juror was "very attentive [and] smiled in a lighthearted manner." Defense counsel further observed that when asked who was happy to be here on jury duty, Ms. George was the only person to "affirmatively respond" that "she was happy when she got her jury document notice." Despite these conflicting views by the attorneys of the juror's responses and demeanor, the trial court took the prosecutor's statement that the juror was uninterested at "her word." Thus, the trial court not only ruled in the prosecutor's favor without confirming the purported lack of interest, but did so without explaining why he chose the representation of one "officer of the court" over that of another. This scenario underscores the problem in accepting an attorney's assertion of good faith as a basis for allowing a peremptory challenge.[9]
Although the dissent acknowledges that "[e]very trial court judge must closely observe the venire process and assiduously provide record support for the denial of any objection to a peremptory challenge," dissenting op. at 1211, it is inescapable that there was no record support in this case. Moreover, Melbourne does not relieve a trial court from weighing the genuineness of a reason just as it would any other disputed fact. Thus, the trial court's acceptance of the prosecutor's word "as an officer of the court," in this case without determining why the defense counsel's contrary observation was less credible essentially resulted in no factual determination by the trial court.
On this record, the trial court's decision to allow the prosecutor's peremptory challenge to an African-American juror based solely on the prosecutor's "word," which was contradicted by defense counsel and *1203 was otherwise without record support, is exactly the type of good faith affirmation that the United States Supreme Court in Batson and Purkett found would render the requirements of a race-neutral explanation "vain and illusory," and therefore insufficient to satisfy equal protection.
In light of the disagreement of the prosecutor and defense attorney as to the juror's demeanor, and the trial court's inability to confirm the prosecutor's impressions, Wright required that the strike be disallowed. Melbourne's holding that the focus of the inquiry is on the genuineness of the explanation does not require a different result because in this case the State never satisfied its burden of production by proffering a race-neutral reason that was either observed by the trial court or otherwise supported by the record. Accordingly, the decision of the district court below is quashed to the extent that it is inconsistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and LEWIS and QUINCE, JJ., concur.
WELLS, J., dissents with an opinion.
BELL, J., dissents with an opinion, in which WELLS and CANTERO, JJ., concur.
WELLS, J., dissenting.
I join in the dissenting opinion of Justice Bell. I write only to state my specific disagreement with the majority opinion's implication (majority op. at 1199) that its decision is required by the doctrine of stare decisis. To the contrary, stare decisis requires the application of Melbourne v. State, 679 So.2d 759 (Fla.1996), which the majority does not do.
BELL, J., dissenting.
In Melbourne v. State, 679 So.2d 759 (Fla.1996), a unanimous opinion authored by Justice Leander Shaw, a judicious balance was finally reached in the effort to eliminate racial discrimination, yet maintain the full and free use of peremptory challenges.[10] The procedural steps and principles outlined in Melbourne have worked remarkably well. Unfortunately, the majority opinion unnecessarily and imprudently disturbs that balance and returns the courts of Florida to the pre-Melbourne ambiguities and inconsistencies in the appellate review of trial courts' rulings on objections to peremptory challenges. I find no basis on this record to warrant such a disturbance; therefore, I dissent.
The practical result of the majority's holding is that if a potential juror is a member of a distinct racial group, a trial judge may not sustain a peremptory challenge that is based solely upon an attorney's subjective impression of that juror's nonverbal communication (also referred to as demeanor, body language, or "bare looks and gestures"), unless (1) the trial judge personally observes the juror and substantiates the attorney's impression on *1204 the record, or (2) the record, by some unexplained means, otherwise supports the attorney's impression.[11]
To reach its conclusion, the majority expressly limits the Melbourne presumption that peremptory challenges are exercised in a nondiscriminatory manner. The majority says that "the State is not entitled to this presumption unless the existence of its proffered reason is either confirmed by the trial court or otherwise supported by the record." Majority op. at 1201. By doing so, the majority upends the long-accepted pre-State v. Slappy, 522 So.2d 18 (Fla.1988), premise underlying peremptory challenges that peremptory challenges could properly be exercised by trial counsel for subjective, arbitrary, and capricious reasons, including subjective opinions about a juror that are derived from that juror's nonverbal communication. Unlike the facts in Wright v. State, 586 So.2d 1024 (Fla.1991), where there was clear record evidence of a discriminatory intent, the majority here disallows peremptory challenges based solely upon subjective interpretations of nonverbal communication even when there is absolutely no evidence surrounding the challenge that might suggest, much less establish, that the race-neutral reason was pretextual. Therefore, the majority in this case severely retracts the broad presumption of nondiscriminatory intent in Melbourne and retreats back to the Slappy presumption that such peremptory challenges are based upon improper discriminatory bias. Unlike Melbourne, bias is presumed under Slappy because of judicially inferred "conscious or unconscious racism" of the attorney (and the judge who would accept such a reason). Wright, 586 So.2d at 1029 (quoting Slappy, 522 So.2d at 23, and Batson v. Kentucky, 476 U.S. 79, 106, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (Marshall, J., concurring)).[12]

I. Melbourne

From the seminal decision in State v. Neil, 457 So.2d 481 (Fla.1984), until the unanimous opinion authored by Justice Shaw in Melbourne, the trial courts of Florida struggled with applying this Court's varying refinements of the procedures for dealing with racially motivated peremptory challenges.
In Melbourne, the Court examined a recent United States Supreme Court decision in Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). This examination led to the following conclusion:

*1205 In light of Purkett and due to the difficulty some Florida courts have had in applying our state law, we set forth the following guidelines to assist courts in conforming with article I, section 16, Florida Constitution, and the equal protection provisions of our state and federal constitutions. These guidelines encapsulate existing law and are to be used whenever a race-based objection to a peremptory challenge is made. The goal of these guidelines is the elimination of racial discrimination in the exercise of peremptory challenges.
Melbourne, 679 So.2d at 764.

A. Guidance to Trial Courts
Melbourne gave trial courts the following unambiguous and practical three-step procedure to use whenever a race-based objection to a peremptory challenge was made:

Step One. A party objecting to the use of a peremptory challenge must: (a) make a timely objection on that basis, (b) show that the venireperson is a member of a distinct racial group, and (c) request that the court ask the striking party its reason for the strike. If the step one requirements are met, the trial court then asks the proponent of the strike to explain the reason for the strike.

Step Two. The burden of production (not persuasion) then shifts to the proponent of the strike to come forward with a race-neutral explanation. The explanation will be deemed race-neutral for purposes of step two as long as no predominant discriminatory intent is apparent on its face. If the explanation is not facially neutral, the inquiry is over and the strike will be denied.

Step Three. If the explanation in step two is facially race-neutral and the court believes that, given the totality of circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained.[13]
The focus of the court in step three is not on the reasonableness of the explanation (as required before Melbourne) but rather on its genuineness.
Throughout this entire three-step process, the burden of persuasion never leaves the opponent of the strike to prove racial discrimination. See Melbourne, 679 So.2d at 764 (citing Purkett, 514 U.S. at 768, 115 S.Ct. 1769).
The shift away from reasonableness to genuineness in step three was one of Melbourne's major departures from earlier case law. Trial courts were now instructed to refocus their discerning eyes from the objective reasonableness of the asserted nonracial motive to the subjective genuineness of the motive. Why did the Melbourne court make such a radical change? This change was prompted by the United States Supreme Court's statement in Purkett that "[the] whole focus [is not] upon the reasonableness of the asserted nonracial motive ... [but] rather ... the genuineness of the motive ... [,] a finding which turn[s] primarily on an assessment of credibility." Purkett, 514 U.S. at 769, 115 S.Ct. 1769. The Melbourne Court also found that "[t]he Florida Constitution does not require that an explanation be nonracial and reasonable, only that it be truly nonracial." Id. at 764 n. 9.

*1206 B. Guidance to Appellate Courts
Having stated the procedure trial courts were to follow, the Court in Melbourne then directed its attention to providing guiding principles for appellate review. Acknowledging the "extraordinarily rich diversity" of voir dire proceedings and that no rigid set of rules would work in every case, the Court directed reviewing courts to keep in mind two principles when enforcing the above guidelines to trial courts:
First, peremptories are presumed to be exercised in a nondiscriminatory manner. Second, the trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous.
Melbourne, 679 So.2d at 764-65 (footnote omitted).

II. Dorsey

A. The Trial Court's Decision
In this case, defense counsel satisfied step one. Ms. George was a member of a distinct racial group. The trial judge then asked the prosecutor to provide a race-neutral explanation for her peremptory challenge. She satisfied her burden of production (not persuasion) by offering a race-neutral explanation. Unlike the discriminatory explanation first offered in Wright,[14] there was no predominant discriminatory intent apparent on the face of her explanation. Therefore, her explanation is deemed race-neutral for purposes of step two.
Critically, and contrary to the majority suggestion, the trial judge did not end his inquiry into the prosecutor's motive with this explanation. The trial court, guided by Melbourne, looked to the totality of the circumstances surrounding the peremptory challenge. Apparently, other than Ms. George's race, there was nothing in the circumstances surrounding the challenge to suggest any discriminatory intent. So the trial judge quickly focused directly upon what he should have focused upon in this circumstancethe credibility of the prosecutor. The trial judge had to assess the genuineness of her stated motive. The trial judge was not required to test the reasonableness of the asserted nonracial motive, as was necessary when Wright was decided. On the other hand, the trial judge also could not and, in fact, did not simply accept the prosecutor's stated reason. Again, this trial court judge properly focused on the genuineness of the prosecutor's stated reason (i.e., whether her motive was proper, no matter how subjective, or improper).
Throughout this entire process, the burden of persuasion to prove racial discrimination never left defense counsel. The prosecutor stated that to her Ms. George appeared "disinterested." Defense counsel's rebuttal was that to him Ms. George did not appear "disinterested." If one presumes the absence of discriminatory intent, this disagreement could illustrate either the typical jockeying of attorneys over the makeup of the jury or, more simply, the fact that "[a] person's demeanor, subjective as it is, is subject to more than one interpretation." People v. Munson, 171 Ill.2d 158, 215 Ill.Dec. 125, 662 N.E.2d 1265, 1275 (1996). Therefore, it is *1207 perfectly logical to assume that Ms. George could have appeared attentive to the defense and inattentive to the prosecution. Only if one presumes the presence of discriminatory intent does this exchange between counsel become tainted with the aura of discriminatory intent.
At this point, the sole determination for the trial judge under step three of Melbourne was whether he believed, given the totality of the circumstances surrounding the strike, that the explanation by the prosecutor was genuine and not a pretext. The burden was on the defense to prove that the asserted reason was just a pretext for racial discrimination. The trial judge's determination to accept the prosecutor's race-neutral reason as genuine and not pretextual is fully supported by what the record declares, particularly by its silence.[15] There is nothing in the record regarding the racial makeup of the venire panel that suggests a racial motivation for the strike. We know of no other strikes exercised against the same racial group. In fact, in examining the surrounding circumstances, the trial judge noted that the prosecution's first challenge was against a Hispanic female. There is also no evidence that the strike was based on reasons equally applicable to an unchallenged juror or that this prosecutor in any way singled Ms. George out for special treatment. Notably, defense counsel never sought leave to inquire further of Ms. George in order to support his argument or to assist the Court in assessing the demeanor of the challenged venireperson. This is a common and very effective practice to overcome a challenge to a venireperson in such circumstances.
Given the Melbourne presumption that peremptory challenges are exercised in a nondiscriminatory manner and the complete absence in this record of any circumstance suggesting a race-based challenge, the trial court's ruling is indeed supported by the record. Defense counsel simply did not meet his burden of proof imposed by Melbourne, and the trial court's decision to sustain the strike is not clearly erroneous.

B. The District Court Decision
The Third District was expressly guided in its opinion by the two foundational principles of Melbourne. Ironically, the majority opinion fails to discuss or distinguish them. The Dorsey opinion quotes Melbourne and states:
On appeal, reviewing courts must be mindful of two guiding principles: peremptory challenges are presumed to be exercised in a nondiscriminatory manner; and the trial court's decision, which turns primarily on an assessment of credibility, will be affirmed on appeal unless clearly erroneous.
Dorsey v. State, 806 So.2d 559, 562 (Fla. 3d DCA 2002). In addition, the trial judge and the Third District understood an overarching principle in Melbourne that the majority in this case also ignores, maybe even jettisons: "Absent intentional discrimination violative of the Equal Protection Clause, parties should be free to exercise their peremptory challenges for any reason, or no reason at all." Hernandez v. New York, 500 U.S. 352, 374, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (O'Connor, J., concurring in the judgment).
*1208 In affirming the trial court's decision, the Third District correctly noted that Melbourne changed the analysis this Court applied in Wright. The Third District reached the same conclusion in English v. State, 740 So.2d 589 (Fla. 3d DCA 1999), and Washington v. State, 773 So.2d 1202 (Fla. 3d DCA 2000), as did the First District in Bowden v. State, 787 So.2d 185 (Fla. 1st DCA 2001). In Bowden the court stated:
Prior to Melbourne, a peremptory challenge based on body language was not an acceptable reason unless observed by the trial judge and confirmed by the judge on the record. Wright v. State, 586 So.2d 1024, 1029 (Fla.1991). However, the Florida Supreme Court in Melbourne has advised us on review to use common sense and to not create traps of reversible error.
Id. at 189. The Third District applied the appropriate standards and reached the correct conclusion in this case.

C. The Majority Opinion
In its denial that Wright was altered in any way by Melbourne, the majority recedes from Melbourne and violates its core, guiding principles in at least three ways. First, as discussed above, the majority expressly limits the presumption that peremptory challenges are exercised in a nondiscriminatory manner. See majority op. at 1201. Instead, the majority reinstates the presumption of prejudice in the pre-Melbourne cases such as Wright.
Second, the majority fails to give sufficient credence to the unique position of the trial court judge and his or her ability to assess the credibility of the proponent of the peremptory challenge. The very function of trial court judges in our judicial system regularly requires them to assess the credibility of both lay witnesses and attorneys when weighing evidence or ruling on evidentiary questions and motions. Trial courts have long been recognized, relied upon, and respected as competent to make exactly the type of credibility assessments the majority in this case is unwilling to entrust to them. Indeed, the full court in Melbourne entrusted trial judges with exactly this responsibility.
The majority's unwillingness to defer to trial court judges in their credibility assessments of counsel's demeanor-based peremptory challenges gives birth to the majority's third violation of Melbourne. The majority fails to follow Melbourne's second guiding principle to appellate courts. That principle requires appellate courts to give great deference to the trial court and to reverse only when the trial court ruling is clearly erroneous.[16] As *1209 support for their reversal of the trial court below, the majority cites this Court's pre-Melbourne opinion in Floyd v. State, 569 So.2d 1225 (Fla.1990), in the explanation of how the holding and underpinnings of Wright were not modified by Melbourne. In doing so, the majority effectively reintroduces the reasonableness requirement specifically rejected by Melbourne. This is done by the majority's invalidating such strikes unless the trial judge personally observes the venireperson's demeanor and is thereby able to substantiate the assertion. The majority is compelled to this conclusion not only because it reverts to the Slappy presumption of prejudice, but also because it is unwilling to accept and defer to the competency of trial court judges to ferret out discriminatory motives and make those decisions that trial judges are better placed to make than appellate judges.
The majority's requirement that the trial judge must both personally observe and "establish record support" of the venireperson's demeanor is not mandated post-Melbourne and Purkett. This is evident in the post-Melbourne practices of our own district courts of appeal, federal courts,[17] and some other state supreme courts. For example, in State v. Pink, 270 Kan. 728, 20 P.3d 31 (2001), the Supreme Court of Kansas addressed a situation very similar to that here. The defendant in Pink challenged the state's use of a peremptory challenge to remove a black venireperson. The prosecutor argued that the venireperson was struck because she was nodding and smiling broadly when a question adverse to the prosecution was asked of the jury. Id. at 34. The trial court judge noted that he did not see the venireperson nod or smile. Id. The prosecutor pointed out that from where he was sitting he could easily notice the facial expressions of this juror. Id. Defense counsel denied seeing any smiling or nodding during that portion of voir dire. Id. The trial judge stated: "Well, [the prosecutor] is an officer of this Court, and if he says that that's what he observed, that's what he observed; and I find that there is a nonracial reason as enumerated, although I will admit I'm very uncomfortable with it." Id.[18] The defense argued on appeal that it was improper for the court to rely only on the prosecutor's observations. The Kansas Supreme Court stated:
We remain sensitive to the care with which body language must be viewed as *1210 a reason for the striking of a juror, Walston, 256 Kan. at 380-81, 886 P.2d 349, but our standard of review does not negate the requirement that [the defendant] is obligated to carry the burden of establishing purposeful discrimination before the trial court. Although counsel for the State and [the defendant] appeared not to have viewed the same behavior of [the venireperson], it was the trial court's burden to resolve this discrepancy.
As we said in State v. Vargas, 260 Kan. 791, 795, 926 P.2d 223 (1996), the best evidence often will be the demeanor of the attorney who exercises the challenge, the evaluation of which lies peculiarly within the trial court's providence [sic]. The trial judge's ruling was not arbitrary, fanciful, or unreasonable or one which no judge might be expected to make. Under our standard of review, we find no abuse of discretion based on the facts of this case.
Pink, 20 P.3d at 35. The Supreme Court of Illinois made a similar ruling in Munson.[19]
In addition to the above three breaches of Melbourne, the majority opinion also fails to recognize the practical and fundamental importance of nonverbal communication in every jury selection. Most experts estimate that more than sixty percent of all communication is nonverbal, while some experts claim the figure is as high as ninety percent. See Roberto Aron et al., Trial Communication Skills § 42:05 (2d ed.1996). Because such a large part of communication is nonverbal, the manner in which even routine information is exchanged is a useful tool for attorneys during voir dire. Treatises on jury selection are replete with discussions of the importance of identifying and interpreting nonverbal *1211 communication in jury selection.[20]
In light of my criticism of the majority opinion, I must clarify my position. I too am very uneasy with peremptory challenges based solely on demeanor or "bare looks and gestures." The use of peremptory challenges for discriminatory purposes is a very serious issue that every judge must be diligent to ferret out and prevent. Like the majority, I believe that such invidious use of peremptory challenges is all too frequent. However, I believe the process outlined in Melbourne is the best mechanism to address the problem. Particularly, I do not propose, as the majority wrongly suggests the trial judge did in this case, that any trial judge may sustain a peremptory challenge based solely on the good-faith statements of the proponent of the strike. Every trial court judge must closely observe the venire process and assiduously provide record support for the denial of any objection to a peremptory challenge. This is especially true when a challenge is based solely on the demeanor, body language, or "bare looks and gestures" of a venireperson. Before making a ruling, the trial judge must look carefully to the totality of the circumstances surrounding the challenge. The judge must firmly test the credibility of the attorney making the challenge in light of the surrounding circumstances to be sure that the motive for the strike is genuine and proper. Again, the danger of improper, race-based uses of peremptory challenges is ever present and trial judges must be vigilant gatekeepers of fair and impartial justice. This vigilance is critical to the ability of appellate courts to confidently defer to the rulings of trial courts. Nonetheless, the trial court (as well as every appellate court) must keep in mind that the presumption is that peremptory challenges are used in a nondiscriminatory manner and that the burden of proof never leaves the party challenging the strike.

III. Conclusion
Given the presumption that peremptory challenges are used in a nondiscriminatory manner, the trial court ruling in this case is not clearly erroneous. As the Third District did, we should confidently defer to that ruling. Once a proper objection was made by defense counsel, the prosecutor met her burden of production. She came forward with a race-neutral explanation based upon her perception of the juror's demeanor. Critically, the trial judge did much more than simply accept her reason. He tested the credibility of the prosecutor both by looking to the surrounding circumstances and by directly confronting the prosecutor as to her veracity. He clearly assessed the genuineness of her motive. In light of the totality of the circumstances before this judge, there is absolutely nothing in this record to suggest that he made anything but a reasoned decision. The trial judge, in effect, found that the defense failed to carry its burden of proof. The objection to the strike was properly denied. In so doing, the trial judge followed the requirements set forth by this Court in Melbourne. Similarly, we should follow the guidance we gave appellate courts in this Court's unanimous decision in Melbourne. We should affirm the decision of *1212 the Third District because the trial court's ruling was not clearly erroneous.
WELLS and CANTERO, JJ., concur.
NOTES
[1] We have jurisdiction based on express and direct conflict with Wright. See art. V, § 3(b)(3), Fla. Const.
[2] Because the conflict created by the Third District's decision is on an important issue that is likely to recur and therefore should be resolved for benefit of bench and bar, we decline to dismiss this case as moot on the grounds that Mr. Dorsey is now deceased. See State v. Clements, 668 So.2d 980 (Fla. 1996) (holding that upon the death of a criminal defendant, an appeal of his or her conviction may be dismissed); but see Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984) ("It is well settled that mootness does not destroy an appellate court's jurisdiction ... when the questions raised are of great public importance or are likely to recur.").
[3] As we explain below, this issue does not arise where the opponent does not dispute the observation proffered as the reason for the strike. See, e.g., Watson v. State, 841 So.2d 659, 661 (Fla. 4th DCA 2003) (affirming trial court decision upholding peremptory challenge in case in which defense counsel did not contend State was wrong about the juror's claimed lack of interest); Carter v. State, 762 So.2d 1024, 1026-27 (Fla. 3d DCA 2000) (finding issue unpreserved where State explained that it exercised strike because juror had difficulty with concept of reasonable doubt and defendant did not point out to trial court that juror correctly answered questions on reasonable doubt).
[4] Article I, section 16(a) of the Florida Constitution presently provides in pertinent part: "In all criminal prosecutions the accused ... shall have the right ... to have a speedy and public trial by impartial jury...."
[5] In Neil we stated that

[t]he initial presumption is that peremptories will be exercised in a nondiscriminatory manner. A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged because of their race. If a party accomplishes this, then the trial court must decide if there is a substantial likelihood that the peremptory challenges are being exercised solely on the basis of race.
457 So.2d at 486 (footnote omitted, emphasis supplied). In State v. Johans, 613 So.2d 1319, 1321 (Fla.1993), this Court receded from Neil's determination that an inquiry is compelled only when the opponent of the strike demonstrates a "strong likelihood" of discrimination, and held that an inquiry is compelled whenever a party objects and asserts that the strike is made solely on the basis of race.
[6] We have recently reaffirmed our statement in Floyd regarding the need for record support for a challenged peremptory strike. See Rimmer v. State, 825 So.2d 304, 320-21 (Fla.), cert. denied, 537 U.S. 1034, 123 S.Ct. 567, 154 L.Ed.2d 453 (2002).
[7] Although our phraseology in Wright may suggest that the trial court's observation and confirmation of the nonverbal behavior are distinct actions, for purposes of the record on appeal the first does not exist without the second. The trial judge's confirmation makes the observation of the nonverbal behavior a matter of record for appellate review.
[8] In response to the dissent's suggestion that this holding applies to jurors of a "particular gender, occupation or profession or other economic, social, religious, political, or geographic group," dissenting op. at 1204 n. 11, we note that this Court has not extended Neil's protections beyond peremptory challenges based on race, gender, and ethnicity. See Muhammad v. State, 782 So.2d 343, 352 n. 4 (Fla.2001); Abshire v. State, 642 So.2d 542, 543-44 (Fla.1994); State v. Alen, 616 So.2d 452, 454 (Fla.1993).
[9] A party may generate record support for a strike based on a juror's perceived lack of interest or inattentiveness by alerting the trial court to the behavior during voir dire. See State v. Metts, 829 S.W.2d 585, 588 (Mo.Ct. App.1992) ("We note ... that in future cases, the State should inform the court of any perceived `inattentiveness' on the part of a venire member.").
[10] The Melbourne Court stated that the goal of its guidelines was "the elimination of racial discrimination in the exercise of peremptory challenges." Melbourne, 679 So.2d at 764. In footnote 11, the Court also cited to Justice O'Connor's concurring in judgment opinion in Hernandez v. New York, 500 U.S. 352, 374, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991):

"Absent intentional discrimination ... parties should be free to exercise their peremptory strikes for any reason, or no reason at all. The peremptory challenge is, `as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose.' Lewis v. United States, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892)."
Melbourne, 679 So.2d at 764 n. 11 (quoting Hernandez).
[11] This case deals specifically with the race of the juror. One must assume that the majority's holding also would apply to the other areas of discrimination courts have enjoined. These include peremptory challenges based solely upon an attorney's subjective impression of a juror's demeanor exercised against a juror of a particular gender, occupation, or profession or other economic, social, religious, political, or geographical group. See 33 Fla. Jur 2d Juries § 95-98 (2003).
[12] This Court stated in Slappy:

A prosecutor's own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is "sullen," or "distant," a characterization that would not have come to his mind if a white juror had acted identically. A judge's own conscious or unconscious racism may lead him to accept such an explanation as well supported.... [P]rosecutors' peremptories are based on their "seat-of-the-pants instincts."... Yet "seat-of-the-pants instincts" may often be just another term for racial prejudice. Even if all parties approach the Court's mandate with the best of conscious intentions, that mandate requires them to confront and overcome their own racism on all levels....
State v. Slappy, 522 So.2d 18, 23 (Fla.1988) (quoting Batson, 476 U.S. at 106, 106 S.Ct. 1712 (Marshall, J., concurring)).
[13] In Slappy, the Court said that relevant circumstances surrounding the strike may include, but are not limited to, the following: the racial makeup of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment.
[14] In Wright, the prosecutor's explanation for using the peremptory challenge was that the venireperson "would be able to identify himself more with the Defendant, since they are both black males of essentially the same age." Wright 586 So.2d at 1028. The prosecutor then offered an alternative ground for challenging the venireperson, "explaining that there had been no eye contact between [the venireperson] and the prosecutor." Id. A discriminatory intent was evident in Wright, as clearly stated in the first explanation offered by the prosecutor.
[15] As when the proverbial partially filled glass of water is viewed by some as half-empty and others as half-full, one's presumption about discriminatory intent determines how one perceives the record in this case. If the absence of discriminatory intent is presumed, as Melbourne dictates, the absence of anything in this record to suggest discrimination supports that presumption. However, if one presumes the presence of discriminatory intent, as the majority does, the same void in this record fails to remove the presumption.
[16] The "clearly erroneous" standard is borrowed from federal case law. In determining the meaning of this standard, American Jurisprudence states:

One commonly employed formulation of the meaning of the "clearly erroneous" standard states that a finding of fact is clearly erroneous when, although there is evidence to support such finding, the reviewing court upon reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. Such a mistake will be found to have occurred where findings are not supported by substantial evidence, are contrary to the clear weight of the evidence, or are based on an erroneous view of the law. Similarly, it has been held that a finding is clearly erroneous where it bears no rational relationship to the supporting evidentiary data, where it is based on a mistake as to the effect of the evidence, or where, although there is evidence which if credible would be substantial, the force and effect of the testimony considered as a whole convinces the court that the finding is so against the great preponderance of the credible testimony that it does not reflect or represent the truth and right of the case.
5 Am.Jur.2d Appellate Review § 672 (1995) (footnotes omitted).
[17] Federal courts have not systematically required personal observation and record support to sustain a peremptory challenge. See Hernandez, 500 U.S. at 365, 111 S.Ct. 1859 ("There will seldom be much evidence bearing on [the] issue [whether the prosecutor's explanation should be believed], and the best evidence often will be the demeanor of the attorney who exercises the challenge.") (plurality opinion). See also Great Plains Equipment, Inc. v. Koch Gathering Systems, Inc., 45 F.3d 962, 965 (5th Cir.1995), which stated:

[T]here is no authority for the proposition that we should uphold the district court's credibility assessment only if it is supported by evidence in the record. In fact we have specifically declined to adopt such a requirement because peremptory challenges can be based on anything except illegal discriminatory bias.
(Citation omitted.)
[18] Significantly to me, in this case the trial judge did more than the trial judge in Pink. The judge here did not accept the purity of the prosecutor's motive simply because she was an officer of the court. Critically, he examined (however briefly) the surrounding circumstance and tested her veracity. Only after this examination did he reach his credibility determination.
[19] The defense in Munson challenged the prosecutor's use of a peremptory challenge against a black venireperson. The prosecutor's explanation for the challenge was that the venireperson never made eye contact with the prosecution and appeared hostile to the prosecution. Id. at 1274. Defendant argued that the state's explanations were mere pretext. The court stated:

A person's demeanor, subjective as it is, is subject to more than one interpretation. Therefore, that the court did not observe or that the court's interpretation of a prospective juror's demeanor differs from the challenger's observation would not necessarily be dispositive. While confirmation that the trial court observed the same demeanor as did the challenger would lend credence to any purported race-neutral explanation, we believe it sufficient that the court must closely examine such explanation in light of its observation and other relevant factors.
Here, the trial court was not unmindful of the need to scrutinize the State's demeanor-based explanation. In assessing that explanation, the court expressly noted the subjectivity of the State's assessment of [the venireperson]. The court again stated its reliance on other factors, such as the number of peremptory challenges used by the State, as well as the race of key witnesses in the case. See People v. Peeples (1993), [155 Ill.2d 422, 186 Ill.Dec. 341,] 616 N.E.2d 294.
We note additionally that the court observed the demeanor and assessed the credibility of [the prosecutors]. Although the court was wrong in the number of black jurors it had originally anticipated, the court was able to support its findings with other factors. We cannot say that those findings were clearly erroneous. See Harris, [207 Ill.Dec. 400,] 647 N.E.2d 893.
Mindful of the deference to be accorded the trial court's findings, we perceive no error in the court's determination of no purposeful discrimination in the exclusion of [the prospective jurors].
Munson, 215 Ill.Dec. 125, 662 N.E.2d at 1265 (citations omitted); see also State v. Lopez, 721 A.2d 837 (R.I.1998) (peremptory challenge based on "gut feeling" about the juror's desirability was race-neutral explanation and trial court ruling was not clearly wrong in overruling the defendant's Batson objection).
[20] See, e.g., V. Hale Starr & Mark McCormick, Jury Selection: An Attorney's Guide to Jury Law and Methods §§ 12.0-15.10 (2d ed.1993) (devoting over a hundred pages to the study of nonverbal communication); Herald Price Fahringer, "Mirror, Mirror on the Wall ...": Body Language, Intuition, and the Art of Jury Selection, 17 Am. J. Trial Advoc. 197 (1993); Robert L. Haig, Jury Selection Strategy, 2 New York Pract. Series § 28.3 (2002).