718 So.2d 878 (1998)
Robert LEGETTE, Appellant,
v.
STATE of Florida, Appellee.
No. 97-1692.
District Court of Appeal of Florida, Fourth District.
September 9, 1998.
Rehearing and Reconsideration Denied October 13, 1998.
Michael D. Gelety, Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Carol Cobourn Asbury, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, Judge.
Robert Legette appeals his conviction of manslaughter after a jury trial. The state charged the defendant with second degree murder. The state's theory of the case was that Legette shot the victim in a fit of jealous rage because he suspected that his wife was having an affair with the victim. The defense argued that the shooting was an accident that occurred after both men had been drinking. We affirm the conviction and write primarily to address one issuethe prosecutor's *879 disclosure during closing argument that a lesser included offense was a misdemeanor.
The case arises from the shooting death of victim Donald Stack in the defendant's trailer. It was undisputed that the defendant shot Stack in the head with a handgun. A significant piece of evidence against Legette was his taped statement. In the statement, the defendant said that he had known Stack for thirty years and that they were best friends. On the night of the shooting, the defendant first saw Stack at Phil and Eddie's Tavern between 8:30-9:00 p.m. The two men drank together. Then they got in a car and went looking for the defendant's wife. Legette and his wife had had a fight and his wife had left their home.
After unsuccessfully checking several bars, Legette and the victim returned to Phil and Eddie's and had a few more drinks. Defendant left Stack at the bar around 9:30-10:00 p.m. and returned to his trailer. Stack arrived sometime later. In his statement, Legette said that he and the victim played cards at the kitchen table. At one point, Legette retired to a recliner chair. Beside the chair lay a Baretta .25 semiautomatic pistol. Stack came over to the chair, leaned over and said, "Let's go get a drink."
The defendant said that he then picked up the pistol and said, "This is what [my wife] needs. Right here." He claimed that the gun went off accidentally, with Stack's head two to three feet away.
Three shell casings were found on the scene and four bullet holes in the trailer. The only evidence of a fight were a couple of broken teacups. There were no marks on the victim.
Regarding the operation of the gun, defendant did not "know whether you have to cock it first. If you do cock it first then it shoots automatic. You don't door you just pull the trigger and it shoots." He maintained that if you pull the trigger one time "it just keeps going." He stated that "you don't have to cock this gun. Uh, it just, when it recoils I guess it cocks itself again." To a detective, Legette said that "if you pull the trigger, and you hold the trigger back, it will fire rounds in succession, kind of like an automatic."
The defendant said that he had fired that gun only once before, by the ceiling fan in the kitchen, because his wife came home at 2 a.m. and he was trying to scare her. Legette admitted that he was a jealous person and that if he ever found his wife with another man "there would have been trouble." The defendant denied feeling jealous of the victim.
Detective Lindsey responded to the trailer. He found the defendant at the trailer "visibly upset" and smelling of alcohol. The detective waited about four and a half hours before taking a statement because he wanted to give the defendant time to calm down, and "if he was intoxicated, to sober up a little bit."
The state called experts to refute the defendant's theory of the case. A medical examiner stated that Stack was not as close to the gun as defendant claimed because no stippling was found on the victim. A firearms examiner tested the Baretta. He found that in order to fire the gun, "first you have to manually cock the hammer, then pull the trigger." He was unable to get the gun to malfunction. It was "basically" in new condition. The expert testified that the Baretta required 6½ pounds of pressure to pull the trigger, which is on the "higher side of normal." The expert also testified that the dispersal of the three bullets were "not in a straight line," meaning that the gun did not fire automatically, as the defendant claimed. He could not get the gun to expel multiple bullets with one trigger pull.
The state called three witnesses to establish motive. Carol Bray testified that a month before the killing, Legette told her that if he learned that the victim and his wife were having an affair, he would kill them both. Betty Flaherty recalled a threat Legette made the day of the killingthat he had a gun and was going to kill his wife. Christine Seltzer said several hours before the killing, the defendant and the victim came into Phil & Eddie's Tavern, where she was working as a barmaid. Legette was cursing at the victim and accusing him of sleeping with his wife. During the argument, the defendant broke a black plastic *880 ashtray with his hand. Seltzer overheard the defendant on the telephone saying that if he found his wife, he was going to kill her. The morning after the shooting, Seltzer testified that Legette had called her and told her not to say anything about the telephone conversation that she had overheard.
At the charge conference, the trial court decided to instruct the jury on the lesser included offenses of manslaughter, battery, and improper exhibition of a firearm.
During his closing argument, while discussing the lesser included offenses, the prosecutor told the jury that battery was a misdemeanor. The defense timely objected. The trial court overruled a motion for mistrial.
The reference to a misdemeanor suggested to the jury that the sentence for battery was relatively minor when compared to second degree murder and manslaughter. During argument in a non-capital case, neither the prosecutor nor the defense may disclose the length of sentence for the crime charged or for lesser included offenses. Florida Rule of Criminal Procedure 3.390(a) provides:
The presiding judge shall charge the jury only on the law of the case at the conclusion of argument of counsel. Except in capital cases, the judge shall not instruct the jury on the sentence that may be imposed for the offense for which the accused is on trial.

(Emphasis added). The supreme court has construed the rule literally:
the jury need only be instructed as to the possible penalty when it is faced with the choice of recommending either the death penalty or life imprisonment. As to offenses in which the jury plays no role in sentencing, the jury will not be advised of the possible penalties.

Nixon v. State, 572 So.2d 1336, 1345 (Fla. 1990) (emphasis added); see also Knight v. State, 668 So.2d 596, 597 (Fla.1996).
Where the trial judge cannot charge the jury on penalties, it is also improper for counsel to refer to penalties during closing argument, other than by utilizing the phrase "lesser included offense." In a non-capital case, the length of potential sentences is not within the province of the jury; to insinuate penalties into an argument is to suggest an improper basis for the jury's decision.
Over the last two decades, the trend has been to remove the issue of sentence length from the jury's consideration. Prior to January 1, 1985, Rule 3.390(a) provided that upon the request of either the state or the defendant, the trial judge should "include in said charge [to the jury] the maximum and minimum sentences which may be imposed (including probation) for the offense for which the accused is then on trial." The Rule was amended to its current form in 1984. See Florida Bar re Amendment to the Rules Criminal Procedure, 462 So.2d 386, 388 (Fla. 1984). One reason for the rule change was to "minimize the potential for jury sympathy based on the defendant's possible sentence." Limose v. State, 656 So.2d 947, 949 (Fla. 5th DCA 1995).
A second reason for the amendment was to harness the jury's exercise of its pardon power. The policy behind allowing a jury to convict of lesser included offenses is to permit the jury to exercise its "pardon" power by acquitting the defendant of the charged offense and convicting the defendant of a lesser offense. See Amado v. State, 585 So.2d 282, 283 (Fla.1991); State v. Wimberly, 498 So.2d 929, 932 (Fla.1986); State v. Abreau, 363 So.2d 1063 (Fla.1978). In 1982, the Florida Bar and the Conference of Circuit Court Judges requested the amendment to Rule 3.390(a) on an emergency basis outside of the regular four year cycle. The Florida Bar, 416 So.2d 1126 (Fla.1982). Dissenting from the supreme court's decision not to treat the request as an emergency, Justice Alderman discussed the reasons to amend the Rule:
The resolution of the Executive Council of the Conference of Circuit Judges states cogent reasons for eliminating this portion of rule 3.390(a). It explains that the penalty is irrelevant to the jury's sole responsibility of determining a defendant's guilt or innocence, that the jury cannot be privy to the myriad factors which must be considered in sentencing, and that the court's advising the jury of the possible penalty is *881 wholly inconsistent with the jury's responsibility to disregard the consequences of its verdict and tends to encourage a deplorable phenomenon which has come to be referred to as "jury pardon."
The deplorable phenomenon referred to by the Conference of Circuit Judges is the exercise by a jury of its power to return a verdict contrary to the evidence. In criminal cases, this abuse of power is irremediable because once the jury has wrongfully acquitted a defendant, its abuse of power may not be corrected on appeal. Just as there are individuals who disregard the law, there may also be juries that disregard the law. A jury that returns a verdict contrary to the evidence based on feelings of prejudice, bias, or sympathy is an "outlaw" jury, and its verdict will be a miscarriage of justice. Rule 3.390(a), as presently written, allows juries to be informed about matters that are irrelevant to its fact-finding job and which may encourage it to render a verdict contrary to the evidence. We should not allow a jury to be given information which it should not in fact consider.
Id. at 1126-27.
To allow counsel to inject the length of sentence into closing argument is contrary to the policy behind the 1984 amendment to Rule 3.390(a), that the jury should decide a case in accordance with the law and the evidence and disregard the consequences of its verdict. See also Keenan v. State, 379 So.2d 147, 148, n. 5 (Fla. 4th DCA 1980); Mosley v. State, 482 So.2d 530, 532-33 (Fla. 1st DCA 1986).
In the context of this case, we find the prosecutor's reference to the misdemeanor to be non-prejudicial. See § 924.051(1)(a), Fla. Stat. (1997). The defendant was convicted of the lesser included offense of manslaughter, a verdict for which there was an abundance of evidence. That battery is a misdemeanor is something the average juror already knows in a general sense. Even the most unsophisticated juror would expect punishment to be more severe for manslaughter than for battery, which involves only an intentional touching or striking of the victim. Legette argues that the jury may have been dissuaded from convicting him of battery, knowing that the crime was a misdemeanor. However, a more significant roadblock to a battery conviction was that the state of mind element of that crime requires an intentional act, while Legette's defense hinged on the argument that the shooting was a tragic mistake.
As to the remaining issues, we note that it was improper for the prosecutor to argue that defense counsel had requested that the court instruct on lesser included offenses, since it concerned a matter both outside the evidence and inappropriate for the jury's consideration. Which lawyer requested a jury charge has no bearing on guilt or innocence. A prosecutor's disclosure of a legal position taken by a defense lawyer can affect the lawyer's credibility before the jury, which may perceive that the lawyer is arguing for an acquittal, but will settle for a lesser included offense. However, the issue was not preserved by an objection and the error was not fundamental, since it could have been cured by an instruction from the court.
As to the remaining points on appeal, we find no prejudicial error.
AFFIRMED.
STONE, C.J., and FARMER, J., concur.