919 So.2d 628 (2006)
Alex KNIGHT, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D03-2967.
District Court of Appeal of Florida, Third District.
January 25, 2006.
*629 Bennett H. Brummer, Public Defender, and Valerie Jonas, Assistant Public Defender, for appellant.
*630 Charles J. Crist, Jr., Attorney General, and Maria T. Armas, Assistant Attorney General, for appellee.
Before COPE, C.J., and FLETCHER and CORTIÑAS, JJ.
CORTIÑAS, Judge.
The defendant, Alex Knight, appeals his conviction and sentence after a jury found him guilty of theft and burglary of an occupied structure. We affirm.
On November 12, 2002, the defendant entered a training room at the offices of Southeast Computer Solutions and locked the door. The training room had computers and servers for training prospective consumers, but no training sessions were scheduled for that day. Ralph Ceocarelli ("Ceocarelli"), a director of Southeast Computer Solutions, knocked on the door to the training room and the defendant emerged carrying a large duffle bag. The defendant apologized and stated that he made a mistake and was looking for a friend. After Ceocarelli inquired about the contents in the duffle bag, the defendant patted the bag down to show that it was empty. The defendant left the building and got into the passenger side of a white van. Ceocarelli followed and began tapping on the window of the van and yelling for the defendant to get out. The driver of the van got out of the car, and the defendant jumped over to the driver's seat and drove away. Ceocarelli recorded the license plate number of the van. Ceocarelli returned to the training room and noticed that a computer, which was normally located at the trainer's station, was missing from its place.
Detective Balaata ("Balaata") responded to the scene at the request of another police officer. Balaata put out a notice for the van and license plate. When the van was found, the defendant was taken into custody and interviewed by Balaata after signing a Miranda[1] rights waiver form. The defendant admitted that he had entered the training room to take a nap and that he moved the computer over to another wall. When Balaata went to inspect the training room, he found the computer exactly where the defendant had indicated, with its cables dangling and detached from the server. The defendant was charged by amended information with grand theft of a computer and burglary of an occupied structure.
The jury found the defendant guilty of theft and burglary of an occupied structure. The trial court sentenced the defendant as a habitual offender to fifteen (15) years imprisonment on the burglary count and allowed 383 days as credit for time served.[2]
The defendant raises three issues on appeal regarding the propriety of (1) the State's peremptory challenges during jury selection, (2) comments made by the trial judge during voir dire, and (3) the trial court's decision not to allow defense counsel to re-cross-examine a witness. We address each of these issues in turn.

I. PEREMPTORY CHALLENGES DURING JURY SELECTION
During jury selection,[3] the State exercised its fourth peremptory challenge *631 against prospective juror Rivera, a female nurse. Defense counsel informed the trial court that the State used three challenges against females[4] and requested a gender-neutral reason for this challenge. The State replied that the juror was a nurse who may be too sympathetic to the victim and, therefore, not "the best candidate for this panel." The trial court rejected the State's reasoning because multiple prospective jurors were in the medical field.
The State then proffered that prospective juror Rivera had a "passive personality" that was not "best suited for this case." The State then elaborated and contrasted the differences between prospective juror Touissant and prospective juror Rivera, both of whom were females employed in the medical field. The prosecutor stated that prospective juror Touissant was "outspoken" and "she had great conviction," and that she would be more suitable for the jury panel. Defense counsel inquired how anyone could determine that prospective juror Rivera was passive, especially "when she was not asked any questions." The prosecutor responded:
"Passive" means  plenty of counsel's questions were directed at the panel in general, and [prospective juror Rivera] never spoke up or tried to interact with any individual thought during counsel's questions or [the trial court's questions]. The only time she directly spoke is when [the trial court] went over the occupation with her and I think counsel asked her one question about what kind of nurse she was.
The trial judge, noting defense counsel's objection, allowed the strike but warned the State, "just the way I advised the defense,[5] I am keeping an eye on you on the female people, all right?" The final jury panel consisted of four females, two males, and two female alternates.
The defendant asserts that the trial court erroneously allowed the State to exercise its peremptory challenges disproportionately against females. Specifically, he contends that the State's reason for striking prospective juror Rivera on the basis of passive personality was not a genuine reason for the challenge.
In Melbourne v. State, 679 So.2d 759 (Fla.1996), the Florida Supreme Court established a three-step analysis for determining the racial, ethnic, and/or gender neutrality and genuineness of a peremptory challenge. See also Anderson v. State, 750 So.2d 741 (Fla. 3d DCA 2000); Greene v. State, 718 So.2d 334 (Fla. 3d DCA 1998). First, the party opposing the peremptory challenge on discriminatory grounds must make a timely objection on that basis, show that the prospective juror is a member of a protected class, and request that the court ask for the striking party's reason for the challenge. Melbourne, 679 So.2d at 764. Second, the burden of production shifts to the proponent of the strike to come forward with a neutral explanation for the challenge. Id. Third, if the explanation is facially neutral, the trial judge must determine whether the proffered explanation for the challenge is genuine. Id. Throughout the three-step Melbourne analysis, the burden of persuasion remains with the opponent of the strike. Id.
*632 In the instant case, the defendant contends that the trial court did not satisfy the third step of the Melbourne analysis. In support of his position, the defendant relies on Dorsey v. State, 868 So.2d 1192 (Fla.2003), where the Florida Supreme Court applied the Melbourne analysis to a peremptory challenge based on a prospective juror's nonverbal behavior, such as lack of interest, inattentiveness, lack of eye contact, or bare looks and gestures. In Dorsey, the State exercised its peremptory challenge against an African-American female, reasoning that the prospective juror "appeared disinterested throughout" and "was sort of staring at the wall." Id. at 1194. Defense counsel requested a race-neutral reason for the challenge, and pointed out that the prospective juror was very attentive, "smiled in a lighthearted manner," and was the only person to respond affirmatively that she was happy to be at jury duty. Id. The trial court allowed the State's challenge, stating that it "didn't notice" the disinterest, but that it would "take [the prosecutor] at her word." Id. at 1195.
The Florida Supreme Court in Dorsey, applying the Melbourne analysis, held that the State did not satisfy its burden of production as it did not proffer a nondiscriminatory reason for the challenge that was either observed by the trial court or supported by the record. Id. at 1202. The court expressed specific concern over "the trial court's inability to confirm the prosecutor's impressions," especially in light of the inconsistent observations made by the prosecutor and defense regarding the juror's nonverbal demeanor. Id. at 1203.
The Dorsey court ruled that the proponent of a peremptory challenge is not entitled to a presumption of genuineness when the prospective juror's nonverbal behavior is disputed by opposing counsel, and is neither observed by the trial court nor supported by the record. Id. at 1202. However, this rule is limited to peremptory challenges based on nonverbal behavior. As for peremptory challenges based on verbal behavior, the Dorsey court specifically stated:
When the reason offered for a peremptory challenge is based on a juror's verbal response to questioning during voir dire, the problem we confront in [a case involving nonverbal behavior] does not occur. The juror's response is not only witnessed by the court but, if there is any doubt about the validity or genuineness of the challenge or its pretextual nature, is also captured by the court reporter and available for the trial court to confirm and the appellate court to review.
Id. at 1196. Here, unlike Dorsey, we confront verbal behavior that was captured in the record and observed by the trial court.
Applying the third step in Melbourne to a situation involving verbal behavior, we find that the trial court did not erroneously determine that the State's proffered reason for the strike was genuine. Peremptory challenges "are presumed to be exercised in a nondiscriminatory manner." Melbourne, 679 So.2d at 764. A trial court's determination that a peremptory strike is genuine, rather than pretextual, "will be affirmed on appeal unless clearly erroneous." Id. at 764-65; see also, Anderson, 750 So.2d at 743; Greene, 718 So.2d at 335. We must emphasize that trial judges are in the best position to determine the genuineness of a peremptory challenge and, absent clear error, appellate judges should be loathe to overturn their findings.
A review of the record refutes the contention that the trial court's decision was clearly erroneous. See, e.g., Dorsey, 868 So.2d at 1195 (emphasizing that a trial *633 court record is necessary for "meaningful appellate review"). On the record, the State pointed out to both the trial court and defense counsel that one of its reasons for striking prospective juror Rivera was that she did not interact verbally in response to questions posed to the jury panel, in contrast to prospective juror Touissant, who was outspoken. The record reflects that many other prospective jurors interacted more than prospective juror Rivera. Finally, the record reflects that four females were picked as jurors and two females were picked as alternates, which would support the trial court's decision that the peremptory challenge was not pretextual.
The dissent's reliance on Thomas v. State, 885 So.2d 968 (Fla. 4th DCA 2004) is misplaced for three reasons. First, in Thomas, the prospective juror was not asked any individual questions by the prosecutor or the defense attorney while, in this case, prospective juror Rivera was asked questions by both the prosecutor and the defense attorney and her answers to each of those questions consisted of one or two-word responses. Second, in Thomas, the Fourth District found that the trial judge erred in not conducting a "genuineness" inquiry pursuant to Melbourne while, in this case, it is clear that the very experienced trial judge conducted a "genuineness" review concerning the peremptory challenge. Third, Thomas involved a peremptory challenge that was partially based on nonverbal behavior by the prospective juror, which, as we have previously stated, is governed by Dorsey. The facts of this case are entirely distinguishable from Thomas and, given the record support for the prosecutor's challenge as well as the trial court's conducting of a "genuineness" inquiry, the applicable standard of review requires that we affirm the trial court's finding.
Accordingly, we find that the defendant did not meet his burden of proving that the trial court's determination as to the genuineness of the challenge was clearly erroneous. We affirm the trial court's decision to allow the State to exercise its peremptory challenge against prospective juror Rivera.

II. TRIAL JUDGE'S COMMENTS DURING VOIR DIRE
At the beginning of voir dire, the trial court instructed the prospective jurors on the Florida criminal justice system and the responsibilities of jurors. The trial judge stated:
We have what is called a bifurcated or separated system where you do your thing and I do mine, and you can't interfere in what I do, and I cannot interfere in what you do, all right?
If you were to find the defendant guilty in this case, sentencingin other words, giving the defendant a sentence, that is my job. That is part of what I do. You are not to be concerned at all with what a possible sentence could be in this case.
The trial judge also instructed the jury that its verdict cannot be based on the defendant's potential sentence.
As voir dire continued, the State inquired about the jurors' religious beliefs, including whether they followed the biblical requirement of needing two witnesses to testify. Prospective juror Dennis voiced his thought that the requirement for two witnesses applied to cases involving capital punishment. The trial court stated that this was not a case involving capital punishment. Defense counsel then posed a hypothetical to the jurors to determine whether a juror, who held a minority viewpoint about the defendant's guilt, would continue to deliberate late in the evening even though the majority of the *634 panel was tired and anxious to go home. Prospective juror Touissant responded that she would attempt to resume deliberations the following day because, otherwise, the jury "might make a decision and send that person to jail for the rest of his life, and he may not be guilty."
Later, at sidebar, the State asked the trial court to clarify that the defendant was not facing life in prison, and both the trial court and defense counsel agreed to do so. Voir dire resumed without immediate clarification to the jury on the issue of life in prison.
Subsequently, defense counsel posed a question to the jurors regarding whether they would tell the other jurors if they believed a testifying police officer did not tell the truth. Prospective juror Cabrera replied that he would stand firm by his decision "because we are talking about a man's life here." Defense counsel responded by stating to the jurors that sentencing is an issue for the judge, and the jurors are not to be concerned about the potential length of the defendant's sentence.
The trial court reiterated defense counsel's point, and additionally stated that this case did not involve a death sentence or "life in prison or anywhere near life in prison." The trial judge instructed the jury, "You are  you are not to concern yourself with the length of the sentence. That is my job." Defense counsel objected to the trial court's statement and moved for a mistrial based on the trial judge's comments to the jury. The trial court denied the motion for mistrial. The final jury panel was selected, and the trial judge again instructed that the jury's "solemn responsibility" is to issue a verdict on the charges based on the evidence presented by each party, and that "the province of the jury and the province of the [c]ourt are well defined and they do not overlap."
The defendant contends that the trial judge's comment concerning life imprisonment violated Florida Rule of Criminal Procedure 3.390(a) (2002). Rule 3.390(a) states, "[e]xcept in capital cases, the judge shall not instruct the jury on the sentence that may be imposed for the offense for which the accused is on trial." Fla. R.Crim. P. 3.390(a) (2002). The purpose of Rule 3.390(a) is to minimize the possibility of jury sympathy based on the defendant's potential sentence, and to control the jury's exercise of its pardon power to ensure that the jury decides a case according to the law and evidence presented, rather than the consequences of its verdict. Legette v. State, 718 So.2d 878, 880-81 (Fla. 4th DCA 1998).
Violations of Rule 3.390(a) are reviewed to determine whether prejudicial error occurred. Id. at 881 (holding that a prosecutor's disclosure during closing argument that lesser-included offense was a misdemeanor violated Rule 3.390(a), but did not prejudice defendant). "Prejudicial error" is defined in Section 924.051, Florida Statutes (2002), as "an error in the trial court that harmfully affected the judgment or sentence." However, the fact that an error has been committed does not necessarily require reversal on appeal. Smith v. State, 217 So.2d 359, 361 (Fla. 3d DCA 1968). Furthermore, "[i]t shall not be presumed that error injuriously affected the substantial rights of the appellant." § 924.33, Fla. Stat. (2002); Smith, 217 So.2d at 361.
We agree that the trial judge erred in making its comment regarding life imprisonment. Nevertheless, we find the isolated misstatement to be harmless, especially in light of the fact that the trial judge's other comments to the prospective jurors were consistent with Rule 3.390(a). See, e.g., Franqui v. State, 804 So.2d 1185, *635 1193 (Fla.2001) (finding harmless error in trial court's isolated statement that the jury was to recommend a death sentence if aggravated circumstances outweighed mitigating circumstances). At the beginning of voir dire, the trial court specifically instructed the jurors that they were not to concern themselves at all with potential sentencing. When the final jury panel was selected, the trial court emphasized that the jurors' sole responsibility was to issue a verdict based on the evidence presented.
Moreover, after considering all of the evidence that was before the jury in the instant case and reviewing the facts as set forth in the record, we find that the trial judge's comment did not mislead the jury as there was sufficient evidence of guilt. See, e.g., Broughton v. State, 790 So.2d 1118, 1119 (Fla. 2d DCA 2001) (finding that jury instruction was not misleading and there was sufficient evidence of guilt to support jury's verdict). In the instant case, in reaching its verdict of guilty, the jury relied on testimony it believed to be credible, as well as other evidence presented throughout the trial. For example, Ceocarelli ultimately identified the defendant as the person who emerged from the training room and the defendant admitted to detective Balaata that he was in the training room and had moved the computer.
Since the jury's verdict was in accordance with the law and the evidence presented, the purpose behind Rule 3.390(a) was satisfied. Accordingly, we find that the trial court's isolated comment did not constitute reversible error.

III. RE-CROSS-EXAMINATION
Prior to the commencement of trial, the trial court arranged a live line-up consisting of the defendant, three other inmates, and the judge's bailiff all wearing jumpsuits and handcuffs. The purpose of the line-up was for Ceocarelli to identify the person he saw in the training room on the day in question. Defense counsel objected on the basis that the defendant was darker-skinned, shorter than the others, and the only one without facial hair. The trial court overruled the objection and allowed Ceocarelli to attempt to identify the perpetrator. Ceocarelli identified the defendant as "the one that most closely resembles the person that I remember." The trial court ruled that Ceocarelli could make an in-court identification and that defense counsel could cross-examine him about the identification.
At trial, the State called Ceocarelli as its eyewitness. Ceocarelli identified the defendant in court and explained his encounter with the defendant. During cross-examination, defense counsel pointed out that, when Ceocarelli initially described the defendant to the police, he could not describe the perpetrator's hair color, hair length, eye color, approximate age, or the existence of any scars or tattoos. Ceocarelli admitted that he was not sure that the defendant was the perpetrator that he saw on November 12, 2002.
The cross-examination continued as follows:
Q. Your response to that question was, that you were not sure; correct?
A. Yes.
I, obviously, said that it had been eight months, since I had seen him, people change in eight months.
I couldn't say with one hundred percent certainty that he was 
Q: You said, it kind of [resembles] him, what I could tell you, the other four guys were definitely, not them.
You don't need to go into that.
(emphasis added).
On re-direct, the prosecutor had Ceocarelli confirm that he picked out the defendant *636 at the live line-up and that there were five (5) men involved in the line-up. Defense counsel requested to re-cross-examine Ceocarelli about the pre-trial line-up identification. The trial court refused defense counsel's request.
A trial court's decision not to allow re-cross-examination is reviewed for abuse of discretion. Hurst v. State, 825 So.2d 517 (Fla. 4th DCA 2002); Louisy v. State, 667 So.2d 972 (Fla. 4th DCA 1996). We find that the trial court did not abuse its discretion in disallowing defense counsel from re-crossing Ceocarelli. Defense counsel opened the door to the line-up issue during cross-examination and no new issues were raised on re-direct. See Hurst, 825 So.2d 517 (holding that the trial court did not abuse its discretion in disallowing re-cross where the prosecutor did not raise any new matters during re-direct). Accordingly, we affirm the trial court's decision.
Affirmed.
FLETCHER, J., concurs.
COPE, C.J., (dissenting).
Respectfully, I disagree with the majority's analysis regarding the state's peremptory strike of juror Rivera. In my view the majority opinion is in conflict with State v. Slappy, 522 So.2d 18 (Fla.1988), receded from in part, Melbourne v. State, 679 So.2d 759 (Fla.1996), and Thomas v. State, 885 So.2d 968 (Fla. 4th DCA 2004).
As set forth by the majority, the state attempted to use its fourth peremptory challenge on venire panel member Rivera, a female nurse. After the trial court rejected the state's initially proffered reason for the strike, the state suggested that she should be stricken because she had a "passive personality." When the defense objected to this characterization, the state offered that Rivera had never spoken up in response to any of the state's group questions directed to the entire panel. Without more, that is not a constitutionally valid race-neutral reason for striking a juror.
In Slappy, the court listed factors tending to show pretext. The list includes "(2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror." Id. at 22. Thus, a juror's silence is insufficient to support striking a juror when there has been no direct questioning of that juror.
Further, the prosecutor's reasoning is entirely illogical. If Rivera had nothing to say in reaction to the state's group questions, there was no reason for her to respond. If a panel member agreed with the prosecutor or understood the point intended by the question, then there was no reason for a prospective juror to say anything.[6] The transcript shows that the majority of venire members did not respond to the group questions. Thus, Rivera's failure to respond to the group questions does not distinguish her from the rest of the venire and cannot give rise to a legitimate reason for striking her from the jury panel.
This case is almost identical to the Fourth District's decision in Thomas, which we should follow. In that case, as here, "during jury selection, the trial court conducted the initial questioning to obtain general background information on the prospective jurors." Id. at 971. The *637 potential juror at issue gave the general information required, and "the state and defense were given the opportunity to conduct voir dire. The state chose not to ask [the prospective juror] any additional questions but at the conclusion of voir dire, the prosecutor exercised a peremptory challenge on [the prospective juror]. . . . The prosecutor stated that [the prospective juror] had simply sat silent throughout the jury selection process." (emphasis added) Id. The Fourth District rejected that as a proper race-neutral reason for striking a juror stating in substance, "Observation of silence in the face of no inquiry . . . is a non-sequitur. Without more it cannot be a genuine race-neutral basis for excluding [the juror] from the jury." Id. at 973. That conclusion is entirely correct. We should follow Thomas and reverse for a new trial.[7]
A new trial is warranted for a second reason. The trial court should have granted the defense motion for mistrial after the judge told the jury that the case did not involve "life in prison or anywhere near life in prison." To a reasonable juror, this comment would suggest that this was a relatively minor case where the penalties would not be very substantial. In reality the State was seeking a thirty-year mandatory sentence, and the trial court ultimately sentenced the defendant to fifteen years as a habitual offender. It is true, as the majority says, that this was an isolated comment  but the effect was to minimize the potential consequences in the eyes of the jury, a factor which may have affected the jury's deliberations. The defense motion for mistrial should have been granted.[8]
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The trial court reduced the grand theft count to petit theft, a second degree misdemeanor.
[3] Judge Manuel "Manny" A. Crespo was the presiding judge during jury selection; Judge Ivan F. Fernandez was the presiding judge at trial. As Judge Crespo recently passed away and was a longtime and legendary jurist in Miami-Dade, we consider it appropriate to interpolate that he enjoyed a well-deserved reputation as an outstanding judge and a great humanitarian. Judge Crespo will be sorely missed.
[4] Defense counsel was incorrect. The State actually exercised two challenges against females and one against a male before exercising its fourth challenge against a female.
[5] The trial court was referring to the warning it issued to defense counsel for exercising peremptory strikes against white individuals.
[6] Examples of the questions referred to by the state include: "[W]ho would need fifty percent of physical evidence and/or fifty percent of testimonial evidence?" (TR. 105); "How many people on the jury feel that the burden on the state is too high?" (TR. 112); "Who does have particular feelings about police officers testifying?" (TR. 116); "I'm going to ask if any of you know [the listed witnesses]." (TR. 118).
[7] I agree with the majority that the decision in Dorsey v. State, 868 So.2d 1192 (Fla.2003), does not apply here. While the prosecutor cited "passive personality," the prosecutor's sole explanation of this was that Rivera failed to respond to any of the open-ended questions. The fact that she did not respond can be ascertained by review of the transcript, and Dorsey is inapplicable. See id. at 1196.

The court in Thomas also discussed Dorsey, but in that case the trial court had injected the issue of non-verbal behavior into the proceedings by characterizing the state's reason as involving the juror's "demeanor." Thomas v. State, 885 So.2d at 971.
[8] I entirely agree with the majority's thoughtful sentiments about the untimely passing of the late Judge Manuel "Manny" A. Crespo. See Majority Opinion at 630-31 n. 3. I also concur with the majority in affirming on the remaining point on appeal.