# Third District Court of Appeal

## State of Florida

Opinion filed November 19, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-1157
Lower Tribunal No. 10-9001
_____

**Adrian Ellis,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Victoria R. Brennan, Judge.

Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.

Before SHEPHERD, C.J., and EMAS and LOGUE, JJ.

EMAS, J.

Adrian Ellis appeals his conviction and sentence for first-degree murder. At issue in this appeal is whether the trial court erred in the manner in which it conducted its Melbourne[1] inquiry upon the State's peremptory challenges of two African-American members of the venire. For the reasons that follow, we hold that the trial court committed clear error, and reverse and remand for a new trial.

On March 25, 2010, Ellis was driving his brother Brandon and two friends to Dadeland Mall. Along the way, Brandon spotted a school mate and asked Ellis to stop. An altercation ensued between Brandon and the school mate. The school mate's brother, Edward Collier (who was also present) became involved in the altercation. At some point, Ellis got out of his vehicle and shot Collier, killing him. Ellis claimed he accidentally fired his weapon. He was charged with first-degree murder and the case proceeded to trial.

During voir dire, the State used two peremptory challenges to strike two different African-American prospective jurors, Mr. Manuel and Mr. Tuckett. On each occasion, the defense objected and asked the State to provide a race-neutral reason for the peremptory challenge. As to prospective juror Mr. Manuel, the State's explanation for the strike was that Mr. Manuel is a pastor and used to be a boot camp officer. The following discussion took place:

> State: Yes, Your Honor. One, he is a pastor. I don't think it rises to the level of a cause challenge.

---

[1] Melbourne v. State, 679 So. 2d 759 (Fla. 1996).

The Court: Okay. And the only other person who is close to being a pastor we have not reached.

State: That's the lady –

The Court: Which means I can't find it's pretextual on those grounds. There is no other pastor we have passed over, do you agree, Mr. Mastos?

Defense: Well, yeah, but why would somebody on a murder case strike a pastor, that makes no sense?

The Court: Well, I don't have to answer the question with regard to the ruling because all I have to do is find it's not pretextual which I'm finding.

Defense: Well, it looks to me like it's a pretextual reason.

The Court: How?

Defense: Well, anybody – look, if you believed in the Bible, a pastor is preaching thou shalt not kill, first commandment. Christ said love one another as I have –

The Court: You're talking about the genuineness of the strike and that's not the analysis. The analysis is what is – does the State want to take Mr. Manuel out because he's black and is that proven by the fact that there's another pastor on here he'd accept who's not black and that's not happening so I'm going to allow the strike. And we're going to move on to wherever we left off.

State: Judge, there is one other thing for the record, where I stand, one of the race neutral reasons I have.

The Court: If you feel the need.

3

State:  I would like to if I could, please.  And that is he is a corrections officer and he is with boot camp.

The Court:  Well, he's retired but, yeah.

State:  Yes, he was.  His whole career he was a corrections officer, boot camp, and I feel that someone that has been in that circumstance with juveniles for so long that oftentimes, this has been my experience here and I got that feeling from him in speaking to him that perhaps he sympathizes or understands defendants and I'm very concerned about that.  That's the other reason that Ms. Dobbins and I –

The Court:  Well, there's certainly no other –

State:  It's not [a] cause [challenge] it's just concern.

The Court:  There's certainly no other boot camp person.

Defense:  Judge, not to belabor the point –

The Court:  Except that we are but go ahead.

Defense:  I know how the Court has ruled but I am of the opinion that Mr. Howell's reasons are smoke screens and that he is striking Mr. Manuel because he is black and I just want to record preserved.

The Court:  First time you said it was preserved and now it's preserved with the phrase smoke screen, which if there's a conviction and you're successful on appeal I bet they quote you.  I bet they do.  We are going to go on . . .

(Emphasis added.)

Later during jury selection, the following exchange took place upon the State's exercise of a peremptory challenge on prospective juror Tuckett:

State:  Yes, Your Honor, we will strike Mr. Tuckett, juror 18.

Defense:  There goes another – I believe he's another African-American, Judge.

The Court:  Let's – yes, he is.[2]

Defense:  Mr. Tuckett.

State:  Is he?

The Court:  Yes.

State:  Oh, okay.
. . .

Defense:  Yes.  I believe that the State needs to come up with a race neutral reason why they are striking another African-American on this panel.

The Court:  Mr. Tuckett is African-American, he is a member of a protected class.  State, what is your race gender neutral reason?

State:  Judge, <u>from the outset he was concerned about whether or not – about the level of premeditation in this particular case</u>.  It is certainly not to the level of cause but it gives me concern that he is looking for a reason to find – looking for a reason for lack of premeditation, if you will, and perhaps would hold a different standard, the State to a different standard for premeditation than what the Court may instruct.  In addition to that I found that in his relationship with me, my questioning, I felt that he was combative –

---

[2] The prospective jurors had been excused and were not in the courtroom when the parties exercised their peremptory challenges, requiring the parties and the court to rely upon written notes in identifying each of the prospective jurors.

The Court:  He was what?

State:  Combative in my conversations with him.  I asked [co-counsel] about the same thing and she used that word also without me asking her about it.  And for those reasons I just am very uncomfortable with him as a juror in this particular case.

The Court:  I can't – I won't say that the record should reflect he was combative with Mr. Howell because I did not observe that, and the record – it wasn't noted by the State at the time so the record should not reflect that.  However, this concern over his concern of premeditation versus felony murder –

Defense:  But I was able to re –

The Court:  If I can finish my sentence, Mr. Mastos.  Is something that's not been raised about anybody else nor did any other juror bring it up.  So in that regard I find this is not a pretextual reason.  And again this analysis isn't about the genuineness of the reason it's about whether it's pretextual.  What did you want to say, Mr. Mastos?

Defense:  I specifically went and addressed that with him and by the time I got done I felt like we had comfortably established that we had no longer had concern with premeditation.  In fact, we pointed out the Court had instructed him on premeditation.  He now had it in his mind and that he was prepared to look at the facts.

The Court:  Again, you're arguing about genuineness which is not part of this analysis and so the strike will be accepted.  And we're going –

Defense:  Over our objection.

The Court:  Yes, sir.  We are going to Ms. Serret, Number 34.

(Emphasis added.)

The trial court overruled the defense objections, and permitted the State's peremptory challenges of both Mr. Manuel and Mr. Tuckett. The jury was sworn and, following trial, found Ellis guilty of first-degree murder. Ellis was subsequently sentenced to life in prison. This appeal followed.

On appeal, Ellis contends that the trial court misapplied the requirements of Melbourne by refusing to consider the genuineness of the State's proffered reasons for striking each of the African-American jurors. The State argues the trial court implicitly considered the genuineness of the State's proffered reasons by applying one of the factors identified in State v. Slappy,[3] namely, whether the strike was based on a reason equally applicable to an unchallenged juror.[4]

_____

[3] 522 So. 2d 18 (Fla. 1988), receded from on other grounds in Melbourne, 679 So. 2d at 765. In Slappy, the Florida Supreme Court "provided a nonexclusive list of factors a trial court may consider in determining whether the reason given for exercising a peremptory challenge is genuine." Booker v. State, 773 So. 2d 1079, 1088 (Fla. 2000).

[4] The State also argues that the defense waived this claim by failing to properly renew its objections prior to the jury being sworn. Upon our review of the record, including the trial court's assurances to the defense that the issue was preserved for appeal, and the trial court's colloquy of the defendant at the conclusion of the jury selection process, we find the objections were not waived and were properly preserved for review. See Scott v. State, 920 So. 2d 698 (Fla. 3d DCA 2006); Ingrassia v. State, 902 So. 2d 357 (Fla. 4th DCA 2005); Langon v. State, 636 So. 2d 578 (Fla. 4th DCA 1994). See also, Johnson v. State, 27 So. 3d 761 (Fla. 2d DCA 2010).

Peremptory challenges are presumed to be exercised in a nondiscriminatory manner, and the burden of establishing the contrary is on the party objecting to the peremptory challenge.  Melbourne, 679 So. 2d at 763 (quoting State v. Neil, 457 So. 2d 481, 486-87 (Fla. 1984)).  In addition, since "the trial court's decision turns primarily on an assessment of credibility, [it] will be affirmed on appeal unless clearly erroneous."  Melbourne, 679 So. 2d at 764-65.

In Melbourne, the Florida Supreme Court established a three-step process to guide the parties and the trial court in properly raising and determining a claim that a peremptory challenge is being used in a discriminatory manner to exclude potential jurors based on race:[5]

> A party objecting to the other side's use of a peremptory challenge on racial grounds must:
>
> a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike.  If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.

---

[5] Melbourne has since been extended to apply to gender and ethnicity.  See e.g., State v. Alen, 616 So. 2d 452 (Fla. 1993); Johnson v. State, 706 So. 2d 401 (Fla. 3d DCA 1998); Joseph v. State, 636 So. 2d 777 (Fla. 3d DCA 1994); Foster v. State, 767 So. 2d 525 (Fla. 4th DCA 2000).  Furthermore, it is not simply the parties' rights that are constitutionally protected; the Florida Supreme Court has held that the venireperson has an independent constitutional right not to be excluded from jury service on the basis of race.  Jefferson v. State, 595 So. 2d 38, 40 (Fla. 1992).  It is for this reason that the appropriate remedy for an improper, discriminatory use of a peremptory challenge may require the improperly challenged venireperson to be seated as a juror, rather than striking the entire panel and beginning the jury selection anew.  Id.

At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2).

Melbourne, 679 So. 2d at 764 (footnotes omitted).

Assuming the proponent of the strike has proffered a race-neutral reason, the trial court must move to the final step, which is the step at issue in the instant case:

If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness.[6]

Id. (Emphasis added.)

As this Court and the Florida Supreme Court have each recognized, "the genuineness of the explanation is the yardstick with which the trial court will determine whether or not the proffered reason is pretextual." Hayes v. State, 94 So. 3d 452, 462 (Fla. 2012) (quoting Davis v. State, 691 So. 2d 1180, 1183 (Fla. 3d DCA 1997)). The genuineness of the explanation is subjective and credibility-based, and simply put, requires the trial court to determine, based upon a consideration of all the circumstances surrounding the strike, whether it believes

---

[6] Previously, in State v. Slappy, 522 So. 2d 18 (Fla. 1988), the Florida Supreme Court held that the trial court was obligated to determine the reasonableness of the proffered explanation. The Court in Melbourne receded from Slappy "[t]o the extent that Slappy and its progeny require a 'reasonable' rather than a 'genuine' nonracial basis for a peremptory strike. . . ." Melbourne, 679 So. 2d at 765.

9

that the proffered explanation is truly the reason for the exercise of the peremptory challenge. See Young v. State, 744 So. 2d 1077, 1082 (Fla. 4th DCA 1999) (recognizing that "identifying the true nature of an attorney's motive behind a peremptory strike turns primarily on an assessment of the attorney's credibility.") Thus, the trial court in this case erred in stating that the genuineness of the proffered reason for the challenge is not a part of the analysis, contrary to the dictates of Melbourne and its progeny.

Of course, it is also true that "the Melbourne procedure does not require the trial court to recite a perfect script or incant specific words in order to properly comply with its analysis under step three." Hayes, 94 So. 3d at 463. "Nevertheless, 'Melbourne does not relieve a trial court from weighing the genuineness of a reason just as it would any other disputed fact.'" Id. (quoting Dorsey v. State, 868 So. 2d 1192, 1202 (Fla. 2003)). Despite the deference afforded to the trial court in this regard, the reviewing court "cannot assume that a genuineness inquiry was actually conducted in order to defer to the trial court." Id. (agreeing that "deference does not imply abandonment or abdication of judicial review.")(quoting Nowell v. State, 998 So. 2d 597, 602 (Fla. 2008)). And "where the record provides no indication that the trial court engaged in the required genuineness inquiry," "Florida's appellate courts have fairly consistently reversed for a new trial." Id.

10

We reject the State's argument that the trial court implicitly considered the genuineness of the proffered explanation. It is not simply that the record fails to indicate whether such an analysis was conducted; rather, it reveals the trial court specifically rejected any such analysis as irrelevant. As to each juror, the defense squarely raised the genuineness of the State's purported explanations for the strike, and the trial court squarely rejected any consideration of genuineness as "not part of this analysis." The trial court's failure to consider the genuineness of the State's explanation for the strike was clearly erroneous.

We also reject the State's argument that the trial court's consideration of a single Slappy factor satisfied Melbourne's requirements. While it is true that the trial court articulated one of the factors suggested in Slappy—whether the challenge was based on reasons equally applicable to jurors who were not challenged—we find this inadequate for the following reasons:

First, the trial court considered this factor only after expressly rejecting any consideration of genuineness.[7] Of significance, the Slappy factors form a part of

_____

[7] The Slappy Court articulated a non-exclusive list of five factors:

> We agree that the presence of one or more of these factors will tend to show that the state's reasons are not actually supported by the record or are an impermissible pretext: (1) alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a

11

the trial court's analysis in step 3, where the central focus is on the genuineness of the proffered explanation.  Given the trial court's refusal to consider genuineness, its subsequent consideration of a single Slappy factor cannot salvage the inadequate Melbourne analysis conducted here.

Second, Melbourne requires a consideration of all of the circumstances surrounding the strike when making its determinations, and the five Slappy factors merely represent a non-exclusive list which a court may consider.  Hayes, 94 So. 3d at 462.  The trial court chose to rely upon a single Slappy factor that was wholly irrelevant to the case at bar.  The State's initial proffered explanation for striking Mr. Manuel was that he was a pastor.  The trial court acknowledged that there was no other pastor on the venire, and then articulated its analysis:

> The analysis is what is – does the State want to take Mr. Manuel out because he's black and is that proven by the fact that there's another pastor on here he'd accept who's not black and that's not happening so I'm going to allow the strike.

Because there was no other pastor on the venire (much less another pastor who was not African-American) there was no similarly-situated juror with whom a

> challenge based on reasons equally applicable to juror[s] who were not challenged.

522 So. 2d at 22 (citing with approval Slappy v. State, 503 So. 2d 350, 355 (Fla. 3d DCA 1987)) (emphasis supplied).  In Melbourne, the Court included two additional factors which may be considered in the analysis: "the racial make-up of the venire" and "prior strikes exercised against the same racial group."  Melbourne, 679 So. 2d at 764 n. 8.

comparison could be made. This reliance on a single inapplicable <u>Slappy</u> factor could not serve as an indicator of genuineness or advance the ultimate determination of pretext.[8] The trial court relied upon this same inapplicable <u>Slappy</u> factor in its analysis of the State's second explanation for the strike of Mr. Manuel (that there was no other boot camp officer on the venire), and the subsequent strike of Mr. Tuckett (that no other prospective juror expressed concerns regarding the issue of premeditation). We hold that the trial court's clear error requires reversal for a new trial.

Reversed and remanded for a new trial.

---

[8] The mere fact that there was no similarly-situated juror with whom a comparison could be made does not render the proffered basis for the peremptory "genuine" nor reasonably lead to the conclusion that it was not pretextual. To permit a finding of no pretext by reliance upon a single, inapplicable <u>Slappy</u> factor would eviscerate <u>Melbourne</u> and invite gamesmanship, as an attorney would merely need to proffer, as a reason for the strike, some race-neutral circumstance or characteristic that is not shared by any other prospective juror, thereby defying a comparison of similarly-situated jurors, and foreclosing a finding of pretext.